Pamlico Marine Co., Inc. v. N. C. Dept. of Natural Resources

the light most favorable to the State, drawing all reasonable inferences in the State's favor. The court must determine as a matter of law that the State has offered substantial evidence as to every material element of the crime charged. *State v. Simpson*, 303 N.C. 439, 279 S.E. 2d 542 (1981). Having considered the evidence in the light most favorable to the State, we find that there was substantial evidence of defendant's guilt as to each element of the crime of first degree burglary. Accordingly, defendant's assignment of error is overruled.

No error.

Judges ARNOLD and PHILLIPS concur.

---

PAMLICO MARINE COMPANY, INC. v. NORTH CAROLINA DEPARTMENT OF NATURAL RESOURCES AND COMMUNITY DEVELOPMENT, COASTAL RESOURCES COMMISSION DIVISION

No. 852SC1034

(Filed 1 April 1986)

1. **Waters and Watercourses § 7— construction of decking or marina—building permit required—no exception from permit requirement of Coastal Area Management Act**

   There was no merit to petitioner's contention that its construction of decking on two sides of a marina to replace decking removed ten years earlier fit within the exception of the Coastal Area Management Act which excepted "[c]ompletion of any development, not otherwise in violation of law, for which a valid building or zoning permit was issued prior to the ratification of [the Act] and which development was initiated prior to the ratification of [the Act]," since petitioner had to obtain a new building permit from the Town of Bath prior to building the decking; the required building permit was issued after ratification of the act; and the exception therefore would not apply.

2. **Waters and Watercourses § 7— replacement of decking on marina—no repair to existing structure—accessory use—Coastal Area Management Act—applicability of permit requirements**

   Replacement of decking on a marina was not a repair or replacement to an existing structure so as to exempt petitioner from the permit requirements of the Coastal Area Management Act, but construction of the decking was an "accessory use" exempted from the permit requirements as long as it met additional requirements set out by administrative regulations adopted by the Coastal Resources Commission.

**3. Waters and Watercourses § 7; Statutes § 5.1— permitting procedure of Coastal Resources Commission — ambiguous regulations — legislative intent — "and" substituted for "or"**

    Administrative regulations adopted by the Coastal Resources Commission to govern its permitting procedure were ambiguous where the provisions allowing for exemption from the permit requirements stated that a development must meet *all* of the listed criteria, but between numbers *five and six on* the list appeared the disjunctive "or"; however, courts, in interpreting statutes and regulations, may substitute "and" for "or", and vice versa, where necessary to give full effect to the legislative intent when the context so indicates. Viewed in the light of the legislative intent to control development in the fragile coastal regions, the regulations in question must be interpreted as requiring that all criteria must be met before an exemption can be granted, and the Coastal Resources Commission's interpretation that "or" should be read as "and" is the correct one.

APPEAL by petitioner from *Hobgood, Judge*. Judgment entered 26 April 1985 in Superior Court, BEAUFORT County. Heard in the Court of Appeals 12 February 1986.

Petitioner appeals from a judgment affirming the decision of the Coastal Resources Commission assessing petitioner with a $250.00 civil penalty for "willfully undertaking minor development in a duly designated area of environmental concern without the required CAMA (Coastal Area Management Act) development permit."

*Gaskins, McMullan and Gaskins, P.A., by Herman E. Gaskins, Jr. for petitioner-appellant.*

*Attorney General Lacy H. Thornburg by Special Deputy Attorney General Daniel C. Oakley for respondent-appellee.*

PARKER, Judge.

Petitioner operates a marina on Back Creek in the town of Bath. Before petitioner bought this marina, its previous owners had removed decking on two sides of the marina, but the decking on two sides of the marina remained. The previous owners, intending to replace the decking at a later time, had left the pilings supporting the removed decking in place. However, when petitioner bought the property, the pilings remained but the decking had not been replaced. In the summer of 1983, petitioner undertook to replace the decking. In its application to the Town of Bath for a building permit, petitioner acknowledged that the proposed

construction was one for which a CAMA permit was required, and that a permit was never applied for.

[1] The Coastal Area Management Act, G.S. 113A-100, *et seq.*, was enacted in order to "establish a comprehensive plan for the protection, preservation, orderly development, and management of the coastal area of North Carolina." G.S. 113A-102(a). As part of this comprehensive plan, the General Assembly created the Coastal Resources Commission, G.S. 113A-104, in order to implement and enforce a permitting procedure through which development in the designated "areas of environmental concern," would be controlled. G.S. 113A-118. This permitting process required "every person . . . undertaking any development in any area of environmental concern" to obtain a permit from the Coastal Resources Commission. *Id.* "Development" is defined in G.S. 113A-103(5)(a), with specific exceptions listed in subsection (b). Petitioner asserts that its construction fit within exception (b)(7), which excepts the "[c]ompletion of any development, not otherwise in violation of law, for which a valid building or zoning permit was issued prior to the ratification of this Article and which development was initiated prior to the ratification of this Article."

Petitioner contends that, because the original marina and pilings were built before the ratification of CAMA, a permit was not required to reconstruct the decking removed some ten years earlier. This argument ignores the fact that petitioner had to obtain a new building permit from the Town of Bath prior to building this decking. Clearly, the required building permit was issued after the ratification of CAMA; therefore, the exception would not apply. The purpose of the exception was to exempt projects already underway and were so far along in their development that to require a CAMA permit would be unfair and possibly a denial of constitutionally protected vested private property rights. *See generally In re Application of Campsites Unlimited*, 287 N.C. 493, 215 S.E. 2d 73 (1975).

In laws regulating land use, provisions for exempting nonconforming uses, that is, those uses already in existence which, if built today, would violate the land use regulation, are not unusual. *See Atkins v. Zoning Board of Adjustment of Union County*, 53 N.C. App. 723, 281 S.E. 2d 756 (1981). However, those

exemptions end whenever the nonconforming use is destroyed. *Id.* Any expansion of a nonconforming use is also subject to regulation. *Id.* By analogy, the same reasoning applies in this case. The decking had been destroyed prior to the enactment of CAMA. Reconstruction of the decking was undertaken well after the law was in place. The law specifically provides that "enlargement of a structure" is "development" requiring a permit. G.S. 113A-103 (5)(a). Thus, the decking was new construction subject to the permitting requirements of the statute.

[2]  Petitioner also contends that the rebuilding of the decking was exempt under the administrative regulations adopted by the Coastal Resources Commission to govern its permitting procedure. Section .0300, *et seq.*, of the North Carolina Administrative Code (NCAC), in effect at the time of the construction, established criteria for the minor developments which would be exempt from permitting outlined in G.S. 113A-103(5)(b). The provisions petitioner claims exempt it from the permit requirement read as follows:

.0302   CRITERIA FOR EXEMPTION:
         MINOR DEVELOPMENT PERMIT

Development activities in AECs must meet all of the following criteria in order to be eligible for the exemptions from the minor development permit requirements described in Rules .0303 and .0304 of this Section:

(1) The development must not disturb a land area of greater than 200 square feet on a slope of greater than 10 percent;

(2) The development must not involve removal, damage, or destruction of threatened or endangered animal or plant species;

(3) The development must not alter naturally or artificially created surface drainage channels;

(4) The development must not alter the land form or vegetation of a frontal dune;

(5) The development must not be within 20 feet of any permanent surface waters; or

(6) The development must be consistent with all applicable use standards and local land use plans in effect at the time the exemption is granted.

.0303  ACCESSORY USES EXCLUDED

Accessory uses directly related to the existing dominant use that require no plumbing, electrical, or other service connections and do not exceed 200 square feet shall be exempt
. . . .

.0304  REPAIR OR REPLACEMENT

Any structure or part thereof may be repaired or replaced in a similar manner, size, and location as the existing structure without requiring a minor development permit, unless such repair or replacement would be in violation of current AEC standards.

The clear meaning of these regulations is that in order for minor development to be exempt as an "accessory use" or as a "repair or replacement," it must also meet the criteria listed in Section .0302. The first determination, though, is whether the decking was an "accessory use" or a "repair or replacement."

The rule exempting repairs and replacements specifically refers to "existing" structures. This language clearly limits the exemption to the repair or replacement of structures existing at the time the Act was enacted. The decking was not "existing" at that time, and, thus, the replacement of it cannot come within the exception of Section .0304.

In our view, however, construction of the decking was an "accessory use," exempted by Section .0303. The marina itself was already existing at the time the Act was passed and decking attached to and surrounding the marina is an "accessory" to that marina. There is nothing in the record to indicate that the decking required any plumbing, electrical, or other service connections. The decking constructed was 130 square feet, well under the 200 square feet limit of the exemption. As an accessory use, within the requirements of Section .0303, the construction of the decking would be exempt from the permitting requirements so long as it met the additional criteria of Section .0302.

[3]   As drafted, Section .0302 is ambiguous. The first sentence of the section requires that a development, to be exempt, must meet *all* of the listed criteria. However, between numbers five and six of the list appears the disjunctive "or." Petitioner contends that the use of the word "or" between numbers five and six indicates the exemption will be granted so long as the development meets requirements one through four and *either* five or six. Respondent, on the other hand, contends that the word "or" is inconsistent with the word "all" in the first sentence, that "and" was obviously intended and that all six criteria must be met before an exemption can be granted. Only by this interpretation, the Commission argues, can the legislative intent to control development in the fragile coastal regions be fully implemented.

Ordinarily, an administrative agency's interpretation of its own regulation is to be given due deference by the courts unless it is plainly erroneous or inconsistent with the regulation. *See Thorpe v. Housing Authority of City of Durham*, 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed. 2d 474 (1969); *State v. Best*, 292 N.C. 294, 233 S.E. 2d 544 (1977). However, any law, ordinance or regulation adopted pursuant to the police power of the State which restricts the free use of private property is to be construed by the courts strictly in favor of the free use of that property. *In re Application of Rea Construction Co.*, 272 N.C. 715, 158 S.E. 2d 887 (1968).

Faced with these conflicting rules of construction for interpreting an ambiguous regulation, we must determine which interpretation will more effectively promote the intent of the General Assembly when it delegated to the Coastal Resources Commission the power to adopt these regulations. *See State ex rel. Commissioner of Insurance v. North Carolina Rate Bureau*, 300 N.C. 381, 269 S.E. 2d 547 (1980). General Statute 113A-103(5)(c) reads:

> The Commission shall define by rule (and may revise from time to time) certain classes of minor maintenance and improvements which shall be exempted from the permit requirements of this Article, . . . . In developing such rules the Commission shall consider, with regard to the class or classes of units to be exempted:
>
> 1. The size of the improved or scope of the work;

2. The location of the improvement or work in proximity to dunes, waters, marshlands, areas of high seismic activity, areas of unstable soils or geologic formations, and areas enumerated in G.S. 113A-113(b)(3); and

3. Whether or nor [sic] dredging or filling is involved in the maintenance or improvement.

Clearly, one of the key considerations in determining whether a development should be exempt from the permitting requirement is "[t]he location of the improvement or work in proximity to . . . waters. . . ." *Id.* Petitioner's decking was right on the waters of Back Creek. Therefore, we conclude that the Commission's interpretation of its own regulation was the correct one; to hold otherwise would thwart the intent of the Legislature that "every person before undertaking any development in any area of environmental concern shall obtain . . . a permit," G.S. 113A-118(a), with only certain limited exceptions. G.S. 113A-103(5)(b), (c).

Normally, an administrative agency will not be allowed to correct the careless drafting of its regulations through interpretation by the courts. However, courts, in interpreting statutes and regulations, may substitute "and" for "or", and vice versa, where necessary to preserve the constitutionality of the law or to give full effect to the legislative intent, when the context so indicates. *DeSylva v. Ballentine*, 351 U.S. 570, 76 S.Ct. 974, 100 L.Ed. 1415 (1956); *Willis v. United States*, 719 F. 2d 608 (2d Cir. 1983). Viewed in light of the expressed intent of the Legislature, requirements five and six of Section .0302 of the regulations of the Coastal Resources Commission are not interchangeable, and it is inconceivable how one could act as the substitute for the other.

The judgment below is

Affirmed.

Chief Judge HEDRICK and Judge WEBB concur.