P.A.W., A NORTH CAROLINA GENERAL PARTNERSHIP v. TOWN OF BOONE BOARD OF ADJUSTMENT

No. 8824SC1028

(Filed 15 August 1989)

**Municipal Corporations § 30.10— zoning ordinance requiring buffer zone—placement of buffer—interpretation not arbitrary or capricious**

Respondent's interpretation of a zoning ordinance which required a 100-foot buffer zone between a high-density planned development and a low-density residential district was not arbitrary or capricious, was in keeping with the restrictive tenor of the ordinance, and was in line with the evident purpose of the ordinance where respondent's interpretation required that the 100-foot buffer must be measured inward from the outer edge of the high-density zone.

APPEAL by petitioner from *C. Walter Allen, Judge.* Judgment entered 10 June 1988 in Superior Court, WATAUGA County. Heard in the Court of Appeals 13 April 1989.

*Miller & Moseley, by Paul E. Miller, Jr., for petitioner-appellant.*

*Paletta, Hedrick & Berndt, by David R. Paletta, for respondent-appellee.*

BECTON, Judge.

The petitioner-appellant, P.A.W., is a general partnership engaged in the business of developing residential properties. P.A.W. challenges the Town of Boone Board of Adjustment's interpretation of a zoning ordinance which requires a 100-foot buffer zone between a high-density planned development and a low-density residential district. The trial court reviewed the Board's decision on certiorari and found no error. P.A.W. appeals, seeking reversal of the judgment below on the ground that the Board's interpretation was arbitrary and capricious and erroneous as a matter of law. We affirm.

I

P.A.W. obtained a special use permit to develop a certain tract of land in Boone as a "Planned Development Housing Project" ("PD-H"). The tract, zoned R-3 for high-density residential use, adjoins land zoned R-1 for single family residential use. P.A.W. planned to purchase a lot in the R-1 district bordering the PD-H tract, intending to use it to satisfy the 100-foot buffer requirement found in Section 12.8.5.4(a) of the Town of Boone Zoning Ordinance. However, when the partnership submitted plans to the Town showing that the buffer would be located partially on the PD-H tract and partially on the adjoining R-1 lot, the Town Planner informed P.A.W. that the proposed use of the R-1 lot was impermissible under Section 12.8.5.4(a).

P.A.W. sought administrative review of the Town Planner's decision at the Board of Adjustment's 3 March 1988 meeting. Residents of the R-1 zone came to the meeting, asking the Board to protect their neighborhood from the high-density PD-H project by upholding the Town Planner's interpretation. The residents argued that permitting the R-1 lot to be used for the buffer would enable P.A.W. to build more PD-H units near the R-1 zone, and that the ordinance was "intended to protect R-1 from R-3, not R-3 from R-1." Counsel for the partnership also testified, emphasizing that no PD-H development would occur within the buffer area. After lengthy discussion, the Board postponed its decision to permit additional consideration of the language and the intended meaning of Section 12.8.5.4(a).

At the Board's next meeting, on 7 April 1988, counsel for P.A.W. explained his view that the language of the ordinance permitted the buffer "to come from either the R-1 or the R-3 zone."

After more discussion, six of the Board members voted to uphold the Town Planner's decision "on the grounds that the intent behind [Section 12.8.5.4(a)] was to require the buffer strip to be located within the zoning district within which the [PD-H] project is located." One Board member voted to overturn the decision; another abstained from voting.

P.A.W. sought judicial review of the Board's decision pursuant to N.C. Gen. Stat. Sec. 160-388. The trial judge concluded that the Board's decision "contain[ed] no errors of law" and that it was "not arbitrary and capricious."

On appeal, P.A.W. contends that the Board acted arbitrarily and capriciously in that it (1) failed to strictly construe the ordinance in favor of free use of the property; (2) ignored the ordinary meaning of the words in the ordinance; and (3) failed to recognize that the language in the ordinance does not clearly prohibit locating the PD-H buffer zone in the adjoining district, and thus, that the ordinance should be read to permit it.

II

P.A.W. correctly states the general rule that a zoning ordinance, being in derogation of common law property rights, should be construed in favor of the free use of property, and that everything not clearly within the scope of the language used should be excluded from its operation. *See Yancey v. Heafner*, 268 N.C. 263, 266, 150 S.E.2d 440, 443 (1966); *City of Sanford v. Dandy Signs, Inc.*, 62 N.C. App. 568, 569, 303 S.E.2d 228, 230 (1983). However, this rule is not employed to the exclusion of all other rules of construction. *See* Anderson, 3 *American Law of Zoning* Sec. 18.07 (1986).

When construing a municipal ordinance, "the *basic rule* is to ascertain and effectuate the *intent* of the legislative body" that enacted the ordinance. *Coastal Ready-Mix Concrete Co. v. Board of Comm'rs of Town of Nags Head*, 299 N.C. 620, 629, 265 S.E.2d 379, 385 (1980) (emphasis added). The justification for this rule is that the legislative body may well have intended to restrict free use of property in order to separate incompatible uses or to preserve the character of an ongoing use. As our Supreme Court stated in *Blades v. City of Raleigh*,

> [t]he whole concept of zoning implies a restriction upon the owner's right to use a specific tract for a use profitable to him

but detrimental to the value of other properties in the area, thus promoting the most appropriate use of land throughout the municipality, considered as a whole.

280 N.C. 531, 546, 187 S.E.2d 35, 43 (1972).

The legislative intent behind an ordinance should be determined according to the same rules that govern statutory construction, that is, by examining (1) the language, (2) the spirit, and (3) the goal of the ordinance. *Coastal Ready-Mix*, 299 N.C. at 629, 265 S.E.2d at 385. The effect of proposed interpretations also may be considered. *See generally Domestic Elec. Serv., Inc. v. City of Rocky Mount*, 20 N.C. App. 347, 348-49, 201 S.E.2d 508, 509, *aff'd*, 285 N.C. 135, 203 S.E.2d 838 (1974). Because a board of adjustment is vested with reasonable discretion in determining the intended meaning of an ordinance, a court may not substitute its judgment for the board's in the absence of error of law, or arbitrary, oppressive, or manifest abuse of authority. *See generally Godfrey v. Zoning Bd. of Adjustment*, 317 N.C. 51, 54-55, 344 S.E.2d 272, 274 (1986).

### III

Applying the foregoing principles to the case before us, we conclude that the Board's construction of Section 12.8.5.4(a) was neither arbitrary and capricious nor erroneous as a matter of law. We turn first to the language of the ordinance.

### A. Language of the Ordinance

The words in a zoning ordinance must be read in light of surrounding circumstances and given their ordinary meaning and significance. *Penny v. City of Durham*, 249 N.C. 596, 600, 107 S.E. 72, 75 (1959). Despite P.A.W.'s assertions to the contrary, the "ordinary meaning and significance" of the language in Section 12.8.5.4(a) is not readily discernible; instead, we find the language convoluted and ambiguous. That section, with bracketed numerals added to simplify discussion, provides:

> Where a PD-H zoning lot of ten (10) acres or more in area adjoins land zoned residential [1] *without intervening permanent open space at least one hundred (100) feet in width serving as a separation for building areas,* [2] the *portion of the perimeter of the PD-H zoning lot so adjoining* shall be planned and developed only for uses permitted by right in the adjoining

residentially zoned land and in accord with all other re-
quirements applicable to such land, [3] provided however that
in lieu of development, *common open space for the PD-H to
a depth of one hundred (100) feet from the district boundary*
may be permitted. No intensive recreational use or off-street
parking shall be permitted within seventy-five (75) feet of the
PD-H zoning lot boundary in such circumstances . . . .

Boone, N.C., Zoning Ordinance Sec. 12.8.5.4(a) (emphasis added).

The ordinance obviously contemplates placement of a 100-foot
buffer zone somewhere between the PD-H and the residential area.
However, it is not entirely clear from what point the buffer area
is to be measured. As illustrated by the diagram below, three
different interpretations are possible: (1) the buffer could begin
at a "building area" in the residential zone, overlapping into the
PD-H zone; (2) the buffer could begin at the "perimeter" or "district
boundary" of the PD-H zoning lot, extending from the outer limit
of the PD-H zone into the residential zone, so that the entire buffer
is located in the residential zone; or (3) the buffer could begin
at the "perimeter" or "district boundary" of the PD-H zoning lot,
extending only into the zone containing the PD-H, with no overlap
into the residential zone.

P.A.W. argues that by choosing the third interpretation, the
Board failed to give effect to the ordinary meaning of the words,
". . . without intervening permanent open space at least one hun-
dred (100) feet in width serving as a separation for building areas
. . . ." P.A.W. asserts that the plain meaning of that clause is
that the 100-foot buffer must merely separate building areas, and
therefore, that "the only reasonable interpretation" of the ordinance
is that the buffer may be placed partially or totally outside the

PD-H zone. We disagree. In our view, the import of the quoted clause is that a buffer must be created if one does not already exist. However, nothing in that clause indicates where the buffer is to be located. The operative words are "intervening permanent open space"; we believe the words, "serving as a separation for building areas," simply explain the purpose, rather than the location, of the buffer.

Furthermore, P.A.W.'s interpretation fails to give effect to the second and third clauses in Section 12.8.5.4(a). *See State v. Jones*, 305 N.C. 520, 531, 290 S.E.2d 675, 681 (1982); *In re Hardy*, 294 N.C. 90, 95-96, 240 S.E.2d 367, 371-72 (1978) (a provision in an ordinance may not be interpreted out of context but instead must be interpreted as part of the composite whole, giving effect to each provision). In contrast, the Board's interpretation is consistent with the language in the ordinance and is the only one that harmonizes all of the clauses. The second clause provides that any development of the buffer must be consistent with the adjoining residential zone, and indicates that the buffer so developed is to be located in the "portion of the *perimeter* of the PD-H zoning lot" adjoining the residential zone. The third clause provides that the buffer may remain undeveloped, and unequivocally places the buffer at "a depth of [100] feet from the *district boundary*." We believe that the references to "perimeter" and "district boundary" reasonably permitted the Board to conclude that the buffer is to be measured inward from the outer edge of the zone containing the PD-H project.

Finally, while P.A.W.'s interpretation of the ordinance is not irrational or unsupportable, neither is the Board's. Our task on appeal is not to decide whether another interpretation might reasonably have been reached by the Board; instead, our task is simply to determine whether the Board's decision was arbitrary, capricious, or otherwise erroneous. When an ordinance is ambiguous and susceptible to differing interpretations, the ambiguity may be resolved, as here, by selecting the interpretation which yields a fair and reasonable result and which best promotes the intent of the body that adopted the ordinance. *See generally Pamlico Marine Co., Inc. v. N.C. Dept. of Natural Resources*, 80 N.C. App. 201, 206, 341 S.E.2d 108, 112 (1986); 3 *American Law of Zoning* Sec. 18.06.

B. Spirit of the Ordinance

The unmistakable spirit of the ordinance is that a PD-H is to be tightly controlled, especially as it relates to other residential

districts, and in particular, as it relates to districts zoned R-1. For example, the ordinance provides that "[v]ehicular access to streets shall be limited and controlled," and prohibits "intensive recreational use [and] off-street parking . . . within [75] feet of the PD-H zoning lot boundary." *See* Boone, N.C. Zoning Ordinance Secs. 12.8.5.4(b), 12.8.5.4(a). The ordinance also sets out the minimum land area required for a PD-H in various zoning districts. *Id.* at Sec. 12.8.5.2. Significantly, the ordinance explicitly prohibits a PD-H in a district zoned R-1. *Id.* at Sec. 12.8.5.2(a). Finally, Section 12.8.5.4(a) requires a buffer to be located between a PD-H and *any* residential zoning district; R-1 is the Town's most restrictive residential zoning classification. We conclude that the Board's limiting interpretation of Section 12.8.5.4(a) clearly is in keeping with the restrictive tenor of the ordinance.

C.  Goal Ordinance Seeks to Accomplish

The goal of the ordinance is to protect other residential districts, in particular, lower-density districts, from the effects of high-density multiple unit developments. With increased density comes increased traffic and noise, disruption of the quiet of an adjoining residential neighborhood, and, from time to time, a corresponding diminution in property values. Zoning ordinances must be adopted—and, we believe, should also be interpreted—"with reasonable consideration, among other things, as to the character of [a] district and its peculiar suitability for particular uses, and with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout [a] city." N.C. Gen. Stat. Sec. 160A-383 (1987). We conclude that the Board's interpretation is in line with the evident purpose of the ordinance.

Were we to adopt P.A.W.'s stance and permit the buffer to be located in the R-1 zone, a greater number of PD-H units would be built closer to the R-1 single family structures, increasing the disruption attendant to the high-density development. This interpretation would, in our view, violate the legislative intent behind the ordinance. In addition, such a result would be tantamount to impermissibly substituting our judgment for the Board's. No arbitrary action by the Board has been shown. To the contrary, "the record reveals that the Board made its final decision only after what appears to have been a thorough consideration of the merits" of P.A.W.'s contentions, the concerns of the residents of the adjoining neighborhood, and the language and intent of the ordi-

WESTMINSTER CO. v. UNION MUTUAL STOCK LIFE INS. CO.

[95 N.C. App. 117 (1989)]

nance. *Chrismon v. Guilford County*, 322 N.C. 611, 639, 370 S.E.2d 579, 583 (1988). Under these circumstances, the Board's decision must stand.

## IV

For the reasons stated, the decision of the trial court upholding the Board's interpretation of the ordinance is

Affirmed.

Judges JOHNSON and ORR concur.