SOUTH BLVD. VIDEO & NEWS, INC., Petitioner-Appellant v. CHARLOTTE ZONING BOARD OF ADJUSTMENT and CITY OF CHARLOTTE, Respondent-Appellees

No. COA97-824

(Filed 21 April 1998)

**1. Zoning § 89 (NCI4th)— constitutional challenges; vagueness**

The trial court did not err in upholding the Zoning Board of Adjustment's decision that the term "preponderance" in an adult book store and mini-motion picture theater ordinance is satisfied if adult magazines are given a "predominant and far greater importance and emphasis" in display or location in a store.

**2. Zoning § 88 (NCI4th)— constitutional challenges—arbitrariness, capriciousness, or reasonableness**

A zoning board of adjustment's decision that petitioner was operating an adult book store and mini-motion picture theater was not arbitrary and capricious where the ordinance referred to a preponderance of publications and the Board correctly examined not only the quantity of adult materials displayed in the store, but the predominance and importance of these materials to the store's overall business.

**3. Zoning § 75 (NCI4th)— adult book store—videotapes— within statutory definition of publication**

A zoning board of adjustment properly considered sexually oriented videotapes as "publications" within the meaning of N.C.G.S. § 14-202.10. The pertinent feature that makes these publications a target for regulation is not whether they are magazines, books, or videotapes, but rather whether they are distinguished or characterized by the emphasis on sexual topics.

**4. Injunctions § 39 (NCI4th)— operation of adult book store and theater—zoning violation—injunctions sufficiently specific**

An injunction against continued operation of an adult book store and adult mini-motion picture theater is sufficiently spe-

SOUTH BLVD. VIDEO & NEWS v. CHARLOTTE ZONING BD. OF ADJUST.

[129 N.C. App. 282 (1998)]

cific to meet the requirements of N.C.G.S. § 1A-1, Rule 65(d) where the injunction states that it orders petitioner to cease operation of and refrain from operating its current businesses and no reference to the complaint or any other document nor any definition of the operating businesses is needed to understand the trial court's clear directive.

**5. Injunctions § 50 (NCI4th)— adult zoning ordinance—permanent injunction—contempt order—no error**

The trial court did not err in finding petitioner to be in contempt of a permanent injunction in which the trial court ordered petitioner to cease operation of an adult book store and adult mini-motion picture theater where petitioner attempted to continue the business by disguising its operations.

**6. Searches and Seizures § 144 (NCI4th)— administrative inspection warrant—adult book store—probable cause**

The affidavit of a zoning enforcement officer was sufficient to establish probable cause to believe that an adult business was in operation at a particular location and to issue an administrative inspection warrant.

Appeal by petitioner from judgment, order, and permanent injunction entered 16 December 1996 and order of contempt entered 24 January 1997 by Judge Julia V. Jones in Mecklenburg County Superior Court. Heard in the Court of Appeals 18 February 1998.

*Goodman, Carr, Nixon, Laughrun & Levine, by Miles S. Levine, and Loflin & Loflin, by Thomas F. Loflin III, for petitioner-appellant.*

*Office of the City Attorney, by Robert E. Hagemann, for respondent-appellees.*

McGEE, Judge.

Petitioner, a corporation leasing property located at 5920 South Boulevard in Charlotte, North Carolina appeals a 16 December 1996 judgment, order, and permanent injunction affirming the decision of the City of Charlotte's Zoning Board of Adjustment (Board) ordering petitioner to cease operation of an adult bookstore and adult mini-motion picture theater establishment and a 24 January 1997 order finding petitioner in civil contempt of the 16 December 1996 judgment.

SOUTH BLVD. VIDEO & NEWS v. CHARLOTTE ZONING BD. OF ADJUST.

[129 N.C. App. 282 (1998)]

In May 1995 petitioner obtained a permit from the City of Charlotte to conduct a business for the intended use of "video booths and retail sales." Handwritten on the permit was the notation: "Approval is [given] on the basis that the preponderance of inventory/sales will be non-adult in nature. Section 12.518 applies." At the time petitioner obtained this permit, an "adult establishment" was defined in Section 2.201 of the Charlotte zoning ordinance (ordinance) as: "Any structure or use of land which meets the definition of adult establishment as outlined in North Carolina General Statute Sec. 14-202.10."

N.C. Gen. Stat. § 14-202.10(2) (1993) defines "[a]dult establishment" as "an adult bookstore, adult motion picture theatre, adult mini motion picture theatre, adult live entertainment business, or massage business as defined in this section." The statute defines "adult bookstore" as a bookstore that either: (a) "receives a majority of its gross income during any calendar month from the sale of [adult] publications . . ."; or (b) "[has] *as a preponderance* of its publications books, magazines, and other periodicals which are distinguished or characterized by their emphasis on matter depicting, describing, or relating to specified sexual activities or specified anatomical areas, as defined in this section." (Emphasis added). The statute defines "[a]dult mini motion picture theater" as

> an enclosed building with viewing booths designed to hold patrons which is used for presenting motion pictures, a preponderance of which are distinguished or characterized by an emphasis on matter depicting, describing or relating to specified sexual activities or specified anatomical areas as defined in this section, for observation by patrons therein.

N.C. Gen. Stat. § 14-202.10(1) and (6) (1993).

On 18 January 1994 the City of Charlotte enacted Section 12.518 of the ordinance. In pertinent part, Section 12.518 states that:

> (a) Any structure in which an adult bookstore or adult mini motion picture theater establishment is the principal or accessory use shall be separated by a distance of at least 1500 feet from any residential district, school, church, child care center, park or playground.

On 19 October 1995 a zoning inspection of the petitioner's business was conducted pursuant to an administrative inspection warrant.

Based on evidence discovered during the inspection, the Charlotte Zoning Enforcement Code Inspector sent a notice of zoning violation to petitioner on 10 November 1995 and a clarification of the notice on 21 November 1995. The clarification stated that petitioner was an adult bookstore and mini motion picture theater located too close to protected areas. It is undisputed that petitioner's business was not separated by 1500 feet or more from the protected areas described in Section 12.518. Petitioner appealed to the Board.

On 11 June 1996 the Board concluded that petitioner was operating an "adult bookstore" and "adult mini-motion picture theater establishment" at 5920 South Boulevard in violation of the ordinance. Petitioner filed a petition for writ of certiorari with the Mecklenburg County Superior Court on 10 July 1996 and a writ of certiorari was issued on 23 July 1996. On 19 November 1996 the Board filed a motion for permanent injunction requiring petitioner to comply with the ordinance. On 2 December 1996 the trial court conducted a hearing on the Board's motion and determined that the Board had correctly concluded that petitioner was operating an "adult bookstore" and an "adult mini-motion picture theater establishment" at 5920 South Boulevard. Based on this determination, it entered a permanent injunction ordering petitioner to cease operation of and refrain from operating its current businesses (i.e. an "adult bookstore" and "adult mini-motion picture theater establishment") at 5920 South Boulevard.

Subsequently, respondents filed a motion to show cause asking that petitioner be held in contempt of court on 20 December 1996 on the basis that petitioner had "not ceased operation of and refrained from operating the businesses enjoined by [the] Permanent Injunction." In support of this motion, affidavits from zoning inspector David B. Barley and zoning administrator Robert Brandon were submitted. Barley stated in his affidavit that during a visit to the store the previous day, he observed changes in the store's stock and layout, including:

a. The free standing sign outside South Blvd. Video & News read "South Blvd. Video and News Exotica." During prior observations the sign read "South Blvd. Video and News Erotica."

. . .

c. The racks of magazines in the front portion of the store that previously had been filled entirely with adult magazines now are

stocked with approximately 50% adult magazines and 50% comic books . . . .

. . .

e.  The racks of video tape box covers in the front portion of the store that previously had been filled entirely with box covers for adult video tapes now are stocked with approximately 50% adult video tape box covers and 50% non-adult or general circulation video tape movies. The non-adult video tape box covers did not appear to be arranged by category.

Barley further observed that of sixteen different video titles available for viewing, eight had pornographic titles. From these observations, Barley concluded that in his opinion, "South Blvd. Video & News was operating the same businesses on December 19, 1996 as it was operating on all [his] previous visits to the store." A notice of violation was issued to petitioner on 19 December 1996 by Charlotte's Building Standards Department for operating in violation of Section 4.101(2), Section 4.101(3) and Section 4.103 of the ordinance. On 24 January 1997 the trial court issued an order finding petitioner in civil contempt of the 16 December 1996 injunctive order. The trial court ordered petitioner to "[i]mmediately cease operation of all business activity at 5920 South Boulevard[.]" The court noted petitioner's "efforts to change its operations and its argument that it is not the same business that had previously been found to be an illegal 'adult bookstore' and 'adult mini-motion picture theater establishment.' " The trial court further noted that because it did not have the authority to issue any zoning permits, petitioner would be required to submit an application to the zoning administrator before operating a new business at 5920 South Boulevard. Petitioner appealed both the 16 December 1996 judgment, order, and permanent injunction and the 24 January 1997 order of contempt.

I.

[1] Petitioner first argues that the trial court erred by affirming the Board's finding that petitioner was operating an "adult bookstore" and an "adult mini-motion picture theater establishment" in violation of Section 12.518(a) of the ordinance. Specifically, petitioner argues that the Board's decision was erroneous because it was based on an unconstitutionally vague interpretation of the term "preponderance" as used in N.C. Gen. Stat. § 14-202.10(1) & (6).

The United States Supreme Court has stated "that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108, 33 L. Ed. 2d 222, 227 (1972). Two policy reasons for guarding against the enforcement of vague laws are: (1) to give a "person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly[,]" and (2) to "provide explicit standards for those who apply" laws to prevent their "arbitrary and discriminatory enforcement." *Id.* at 108, 33 L. Ed. 2d at 227. As the U.S. Supreme Court stated in *Smith v. Goguen*, an ordinance is not vague merely because "it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all." 415 U.S. 566, 578, 39 L. Ed. 2d 605, 614-15 (1974).

In this case, petitioner argues that "preponderance" is a quantitative term meaning greater than fifty percent. Respondent argues that "the term 'preponderance' is not synonymous with 'majority,' " because "such a definition would run counter to rules of construction" and ignore "the relative location, accessibility, and display of the [adult] materials in question." Recently this Court addressed this same issue in interpreting an analogous Greensboro ordinance defining "adult mini motion picture theater." *Fantasy World, Inc. v. Greensboro Bd. of Adjustment*, 128 N.C. App. 703, 707-08, 496 S.E.2d 825, 828 (1998). This ordinance defines "adult mini motion picture theater" as a theater "presenting motion pictures, a preponderance of which are distinguished or characterized by an emphasis" on adult-oriented materials. *Id.* Our Court held that the use of the standard "preponderance" in the ordinance did not render it void for vagueness as "the use of the word 'preponderance' in the Greensboro ordinance is reasonably specific and sufficiently precise as to be readily understood and, therefore, the ordinance is not unconstitutionally vague on its face." *Id.* at 708, 496 S.E.2d at 828. The Fourth Circuit United States Court of Appeals also addressed this argument in *Hart Book Stores, Inc. v. Edmisten*, 612 F.2d 821, 833 (1979), *cert. denied*, 447 U.S. 929, 65 L. Ed. 2d 1124 (1980), holding that the use of the word "preponderance" in North Carolina's definition of "adult bookstores" was not void for vagueness. The Court reasoned that "these statutory definitions [were] reasonably specific and precise, bearing in mind that unavoidable imprecision is not fatal and celestial precision is not necessary." *Id.* We agree, as this standard is sufficiently defined to provide a person or corporate entity "a reasonable opportunity to know what is prohibited" by the ordinance. *Grayned*, 408 U.S. at 108,

33 L. Ed. 2d at 227. We thus hold that the trial court did not err in upholding the Board's 11 June 1996 decision, in which the Board determined that the definition of "preponderance" is satisfied if "adult magazines" are given a "predominant and far greater importance and emphasis" in display or location in a store. Accordingly, we hold that the ordinance is not unconstitutionally vague on its face. In so holding we note Black's Law Dictionary's definition of "preponderance" as connoting something more than "weight" or quantity; but instead *"denot[ing] a superiority* of weight" which is a qualitative measurement. Black's Law Dictionary 1182 (6th ed. 1990) (emphasis added).

## II.

**[2]** Next, petitioner argues that the Board's decision was "arbitrary and capricious and not based upon substantial evidence of the store's '[h]aving as a preponderance of its publications books, magazines, and other periodicals which are distinguished or characterized by their emphasis on matter depicting, describing, or relating to specified sexual activities or specified anatomical areas, as defined in this section.' " N.C.G.S. § 14-202.10(1)b. We disagree. As discussed above, the Board correctly examined not only the quantity of adult materials displayed at the store, but also the predominance and importance of these materials to the store's overall business. For this reason, we hold that the Board's decision was not arbitrary and capricious on this ground.

## III.

**[3]** Next petitioner contends that the Board and trial court improperly considered the videotapes offered for sale and/or rental in determining whether petitioner was operating an adult bookstore. We disagree. "When construing a municipal ordinance, 'the *basic rule* is to ascertain . . . the *intent* of the legislative body' that enacted the ordinance." *P.A.W. v. Town of Boone Bd. of Adjustment,* 95 N.C. App. 110, 112, 382 S.E.2d 443, 444 (1989) (citation omitted).

> The legislative intent behind an ordinance should be determined according to the same rules that govern statutory construction, that is, by examining (1) the language, (2) the spirit, and (3) the goal of the ordinance. The effect of proposed interpretations also may be considered. Because a board of adjustment is vested with reasonable discretion in determining the intended meaning of an ordinance, a court may not substitute its

judgment for the board's in the absence of error of law, or arbitrary, oppressive, or manifest abuse of authority.

*Id. at* 113, 382 S.E.2d at 444-45 (1989) (citations omitted).

Section 2.201 of the ordinance defines "adult establishment" as "any structure or use of land which meets the definition of adult establishment as outlined in North Carolina General Statute Sec. 14-202.10." "Adult establishment" is defined in N.C. Gen. Stat. § 14-202.10 to include adult bookstores. The statute further defines "[a]dult bookstore" as "having as a preponderance of its *publications books, magazines, and other periodicals which are distinguished or characterized* by their emphasis on matter depicting, describing, or relating to specified sexual activities or specified anatomical areas, as defined in this section." N.C.G.S. § 14-202.10(1)(b) (emphasis added). In construing whether videotapes fall within the definition of "publications books, magazines, and other periodicals," we must examine these words in the context of the other words in the statute. *See Williams v Alexander County Bd. of Educ.*, 128 N.C. App. 599, 603, 495 S.E.2d 406, 408 (1998). The pertinent feature that makes these publications a target for regulation is not whether they are magazines, books, or videotapes, but rather whether they are "distinguished or characterized by their emphasis on matter depicting, describing, or relating to" sexual topics. *Id.*

N.C. Gen. Stat. § 14-202.10 does not define "publications." Another statute that also restricts the use of sexually-oriented materials defines "[p]ublication" to include "any book, magazine, pamphlet, illustration, photograph, picture, sound recording, or a motion picture film which is offered for sale or exhibited in a coin-operated machine." N.C. Gen. Stat. § 19-1.1(8) (1996). This statute further defines "[m]otion picture film" to include "[*v*]*ideo tape* or any other medium used to electronically reproduce images on a screen." N.C. Gen. Stat. § 19-1.1(5)(e) (emphasis added). It is a well-settled principle of statutory construction that "statutes relating to the same subject should be construed *in [pari] materia*, in such a way as to give effect, if possible, to all provisions without destroying the meaning of the statutes involved." *Whittington v. N.C. Dept. of Human Resources*, 100 N.C. App. 603, 606, 398 S.E.2d 40, 42 (1990) (citation omitted).

In interpreting N.C. Gen. Stat. § 14-202.10 consistent with N.C. Gen. Stat. § 19-1.1(5)(e), we find it difficult, if not impossible, to construe the term "publications" under Chapter 14 as not including

videotapes, which are explicitly included under Chapter 19. Both statutes regulate sexually-related materials. The General Assembly is presumed to define words consistently with previously defined terms in other pre-existing statutes. *Bridgers v. Taylor*, 102 N.C. 86, 89, 8 S.E. 893, 894 (1889). If the General Assembly intended to define "publications" in Chapter 14 differently than it did in Chapter 19, it would have explicitly defined the term. For this reason, and in light of "the law as it prevailed before the statute [and] the mischief to be remedied" we hold that in upholding the zoning violation, the Board properly considered the sexually-oriented videotapes as "publications" within the meaning of N.C.G.S. § 14-202.10. *See State v. Partlow*, 91 N.C. 550, 552 (1884).

IV.

**[4]** Petitioner argues that the permanent injunction issued by the trial court failed to meet the requirements of N.C. Gen. Stat. § 1A-1, Rule 65(d) (1990) because it was not sufficiently specific as to the conduct being enjoined. N.C.G.S. § 1A-1, Rule 65(d) requires every injunction and restraining order to be specific in its terms and to describe in reasonable detail, and not by reference to the complaint or other document, the act or acts enjoined or restrained. Petitioner argues that because the injunction does not define what constitutes an "adult book store" or an "adult mini motion picture theater," it does not meet N.C.G.S. § 1A-1, Rule 65(d) requirements. We disagree.

The injunction states that it orders petitioner to cease operation of and refrain from operating its current businesses. The trial court plainly stated that the businesses petitioner was currently operating must cease to operate. No reference to petitioner's complaint or any other document, nor any definition of the operating businesses is needed to understand the trial court's clear directive. We hold that the injunction was sufficiently specific to meet the requirements of N.C.G.S. § 1A-1.

V.

**[5]** Petitioner next argues that the trial court erred in finding probable cause for contempt and finding petitioner to be in contempt of the permanent injunction. Petitioner contends the trial court was not sufficiently specific as to the conduct being enjoined and did not make the required finding that the conduct of petitioner was willful. We disagree. The trial court found that although the petitioner had the means to comply with the injunction, it continued to operate its busi-

ness in violation of the ordinance. The trial court concluded as a matter of law that petitioner's action in continuing to operate the business constituted civil contempt. Accordingly, we hold that the trial court's finding was in effect a finding that the petitioner's conduct was willful.

We disagree with petitioner's argument that the trial court's order that the petitioner cease operations was too broad, and thus constituted a prior restraint in violation of the First Amendment and due process clause of the Fourteenth Amendment. In the 16 December 1996 judgment, order and permanent injunction, the trial court initially ordered the petitioner to cease operation of an adult bookstore and adult mini motion picture establishment. Rather than complying with this order, the petitioner attempted to continue such business by disguising its operations. For instance, it changed its name from "South Blvd. Video & News EROTICA" to "South Blvd. Video & News EXOTICA." It also placed comic books on its front magazine racks where previously only adult magazines were displayed. These efforts by petitioner to evade the effects of the permanent injunction justified the trial court's use of the civil contempt order as petitioner was engaging in efforts to circumvent the purpose of the permanent injunction. For this reason, we reject petitioner's argument.

## VI.

[6] Finally, petitioner contends that the administrative inspection warrant was issued without probable cause. We disagree. N.C. Gen. Stat. § 15-27.2(c)(1) (1983) sets forth the requirements for issuance of such a warrant. The statute specifically requires that:

> the property to be searched or inspected is to be searched or inspected as part of a legally authorized program of inspection which naturally includes that property, or that there is probable cause for believing that there is a condition, object, activity or circumstance which legally justifies such a search or inspection of that property.

In this case the affidavit by the zoning enforcement officer conducting the inspection stated that he had observed

> video tapes and magazines that appeared to be distinguished or characterized by their emphasis on matter depicting, describing, or relating to sexual activities and human genitals, pubic regions, buttocks and female breasts. In addition, merchandise such as artificial genitals and other sexual paraphernalia was displayed.

To the rear of the business establishment were booths that offered video tapes or movies, including adult video tapes or movies, for viewing within the booths.

The trial court did not err by concluding that these facts were sufficient to establish probable cause to believe that an adult business was in operation at this location. Accordingly, the trial court's 16 December 1996 judgment, order, and permanent injunction and 24 January 1997 order of contempt are affirmed.

Affirmed.

Judges WYNN and JOHN concur.