FIRST ATLANTIC MANAGEMENT, CORPORATION, Plaintiff v. DUNLEA REALTY, CO., H. STEVEN HARRIS, and JEFFREY L. DUNLEA, Defendants

COA 97-540

(Filed 3 November 1998)

## 1. Appeal and Error— appealability—denial of summary judgments and motion to strike affidavits—interlocutory

Appeals from the denial of summary judgment motions by both parties and defendant's motion to strike certain affidavits were dismissed as interlocutory where there was no substantial right which could not be corrected upon appeal from final judgment.

## 2. Appeal and Error— appealability—partial summary judgment—possibility of inconsistent verdicts

The trial court correctly determined that a substantial right of plaintiff might be affected by delaying appeal of the grant of defendant's partial summary judgment on an unfair trade practices claim where plaintiff's claims of fraudulent misrepresentation and unfair trade practices rest upon nearly identical factual allegations and a jury would be required to render essentially identical factual determinations in order for plaintiff to prevail. Dismissal of plaintiff's appeal would raise the possibility of inconsistent verdicts.

## 3. Unfair Trade Practices— misrepresentation—sale of real estate management accounts

The trial court erred by granting summary judgment for defendants on an unfair trade practices claim arising from the sale of real estate management accounts where, viewing all inferences against defendants, the statements of defendant Harris concerning the status of the accounts may properly be considered deceptive in view of evidence that he knew the list of accounts attached to the Acquisition Agreement did not accurately represent the accounts which plaintiff believed it was purchasing. It is immaterial whether Harris misrepresented the status of the accounts out of negligence and in good faith or without intent to mislead. Although defendants contend that all of the documents were made effective on 1 April, before any misrepresentations, the agreement was not actually created until the closing on April 4, when the accounts were identified and verified.

## 4. Uniform Commercial Code— property management accounts—not goods under Article 2

Article 2 of the UCC was not applicable to the sale of property management accounts because those accounts are not "goods" within the meaning of Article 2.

## 5. Unfair Trade Practices— election of remedies—before instructions or after verdict

The trial court erred by entering summary judgment for defendants on an unfair trade practices claim arising from the sale of real estate management accounts where defendants contended that plaintiff had elected rescission as its principal relief and could not sue for inconsistent remedies. Although plaintiff's complaint sought damages under N.C.G.S. § 75-1.1 and relied

FIRST ATL. MGMT. CORP. v. DUNLEA REALTY CO.

[131 N.C. App. 242 (1998)]

upon rescission in the alternative, N.C. law does not support the contention that election between remedies must be made at the filing of a complaint. The more recent trend in Chapter 75 cases is the election of remedies prior to the instruction of the jury or after the return of the jury verdict.

Appeal by plaintiff and cross appeal by defendants from order entered 6 March 1997 by Judge James R. Strickland in New Hanover County Superior Court. Heard in the Court of Appeals 14 January 1998.

*Ward and Smith, P.A., by Shelli Stoker Stillerman and John M. Martin, for plaintiff-appellant.*

*Shanklin & McDaniel, L.L.P., by Kenneth A. Shanklin and Susan McDaniel, for defendants-appellees.*

JOHN, Judge.

Plaintiff appeals the trial court's denial of its motion for partial summary judgment and allowance of defendants' motion for partial summary judgment on plaintiff's claim of unfair and deceptive trade practices. Defendants appeal denial of their motion for partial summary judgment alleging *res judicata*, and denial of their motion to strike certain affidavits offered by plaintiff. We reverse the trial court's grant of partial summary judgment to defendants and dismiss the remaining appeals.

Pertinent facts and procedural history include the following: In October 1994, James A. Holmes, III (Holmes) and F. Spruill Thompson (Thompson), officers and directors of plaintiff First Atlantic Management Corporation (First Atlantic), began negotiations with defendant Dunlea Realty Company (Dunlea Realty), acting through defendant H. Steven Harris (Harris), for the purchase of certain Dunlea Realty assets. The latter comprised property management accounts (the accounts) consisting of the right to receive payment from owners of rental property in exchange for management services.

On 23 February 1995, First Atlantic and Dunlea Realty entered into an Offer to Purchase and Contract regarding the accounts. Although a 28 February 1995 closing date was originally agreed upon, closing in actuality took place 4 April 1995. At that time, an Acquisition Agreement (Agreement) was executed, which included a listing of the accounts being sold to First Atlantic.

However, shortly before 4 April 1995, Harris was contacted by Ed Taylor (Taylor), president of Property Management Incorporated (PMI), a competitor of Dunlea Realty. During a 3 April 1995 telephone conversation, Taylor informed Harris that certain of the accounts desired to engage the services of PMI. Harris requested that information concerning the affected accounts be telefaxed to his office. However, Harris did not reveal to representatives of First Atlantic that some of the accounts involved in the asset sale were seeking to secure other property management services.

Several hours following conclusion of the closing on 4 April 1995 and after receiving a telefax list of accounts transferring to PMI, Harris went to plaintiff's offices and disclosed the pending loss of certain accounts including, according to plaintiff, "the Abee Account which . . . represented a substantial amount of the monthly revenues of the entire property management accounts."

On 3 May 1995, plaintiff filed suit alleging breach of contract, fraudulent misrepresentation and nondisclosure, and unfair and deceptive trade practices. Plaintiff thereafter moved for partial summary judgment on the issue of unfair and deceptive trade practices. The trial court denied the motion, and plaintiff voluntarily dismissed its action without prejudice on 3 April 1996.

Plaintiff reinstituted suit 25 April 1996 alleging breach of contract, fraudulent misrepresentation and nondisclosure, and unfair and deceptive trade practices under N.C.G.S. § 75-1.1 (1994). Plaintiff again moved for partial summary judgment on its claim of unfair and deceptive trade practices. Defendants in turn moved for summary judgment on the issue of unfair and deceptive trade practices, sought summary judgment predicated upon *res judicata*, and moved to strike certain affidavits relied upon by plaintiff in its motion.

In an order filed 6 March 1997, the trial court denied plaintiff's motion as well as that of defendants predicated upon *res judicata*, and further denied defendants' motion to strike. However, the court granted defendants' motion for partial summary judgment on plaintiff's claim of unfair and deceptive trade practices.

The court's order further provided that, upon plaintiff's motion, "this Order is hereby . . . certified for immediate appeal" pursuant to N.C.G.S. § 1A-1, Rule 54(b) (1990) (Rule 54(b) certification). Plaintiff and defendants thereafter filed timely appeals to this Court on 12 March 1997 and 18 March 1997 respectively.

I.

[1] Although the parties do not raise the issue, we must first consider *sua sponte* whether the parties' appeals are properly before this Court. *See Bailey v. Gooding*, 301 N.C. 205, 208, 270 S.E.2d 431, 433 (1980) ("if an appealing party has no right of appeal, an appellate court on its own motion should dismiss the appeal even though the question of appealability has not been raised by the parties"). We do so in the spirit of attempting "to eliminate the unnecessary delay and expense of repeated fragmentary appeals." *Raleigh v. Edwards*, 234 N.C. 528, 529, 67 S.E.2d 669, 671 (1951). As our Supreme Court has observed,

> [t]here is no more effective way to procrastinate the administration of justice than that of bringing cases to an appellate court piecemeal through the medium of successive appeals from intermediate orders.

*Veazey v. Durham*, 231 N.C. 357, 363, 57 S.E.2d 377, 382 (1950).

The trial court's order fails to resolve all issues between all parties and thus is not a final judgment, *id.* at 361-62, 57 S.E.2d at 381 (final judgment "disposes of the cause as to all the parties, leaving nothing to be judicially determined between them in the trial court"), but rather is interlocutory. *See* N.C.R. Civ. P. 54(a) (1990); *Liggett Group v. Sunas*, 113 N.C. App. 19, 23, 437 S.E.2d 674, 677 (1993) (order which does not completely dispose of case, such as order granting or denying motion for partial summary judgment, is interlocutory).

Interlocutory orders are ordinarily not directly appealable, *see Liggett*, 113 N.C. App. at 23, 437 S.E.2d at 677, but may be so in two instances:

> [f]irst, an interlocutory order can be immediately appealed if the order is final as to some but not all of the claims . . . and the trial court certifies there is no just reason to delay the appeal [pursuant to N.C.R. Civ. P. 54(b)]. Second, an interlocutory order can be immediately appealed under N.C. Gen. Stat. § 1-277(a) (1983) and 7A-27(d)(1) (1995) "if the trial court's decision deprives the appellant of a substantial right which would be lost absent immediate review."

*Bartlett v. Jacobs*, 124 N.C. App. 521, 524, 477 S.E.2d 693, 695 (1996), *disc. review denied*, 345 N.C. 340, 483 S.E.2d 161 (1997) (citations omitted).

FIRST ATL. MGMT. CORP. v. DUNLEA REALTY CO.

[131 N.C. App. 242 (1998)]

Rule 54(b) certification by the trial court is reviewable by this Court on appeal in the first instance because the trial court's denomination of its decree "a final . . . judgment does not make it so," *Industries, Inc. v. Insurance Co.*, 296 N.C. 486, 491, 251 S.E.2d 443, 447 (1979), if it is not such a judgment. Similarly, the trial court's determination that there is no just reason to delay the appeal, while accorded great deference, *see DKH Corp. v. Rankin-Patterson Oil Co., Inc.*, 348 N.C. 583, 500 S.E.2d 666, 668 (1998), cannot bind the appellate courts because "ruling on the interlocutory nature of appeals is properly a matter for the appellate division, not the trial court." *See Estrada v. Jaques*, 70 N.C. App. 627, 640, 321 S.E.2d 240, 249 (1984), and *McNeil v. Hicks*, 111 N.C. App. 262, 264, 431 S.E.2d 868, 869 (1993), *disc. review denied*, 335 N.C. 557, 441 S.E.2d 118 (1994) (Rule 54(b) certification "is not dispositional when the order appealed from is interlocutory").

Further,

denial of a motion for summary judgment is not a final judgment and is generally (unless affecting a "substantial right") not immediately appealable, even if the trial court has attempted to certify it for appeal under Rule 54(b).

*Cagle v. Teachy*, 111 N.C. App. 244, 247, 431 S.E.2d 801, 803 (1993) (citations omitted). Accordingly, denial of a motion for summary judgment is not appealable unless a substantial right of one of the parties would be prejudiced should the appeal not be heard prior to final judgment. *See Leasing Corp. v. Myers*, 46 N.C. App. 162, 164, 265 S.E.2d 240, 242, *disc. review denied and appeal dismissed*, 301 N.C. 92, —— S.E.2d —— (1980).

Similarly, denial of a motion to strike is interlocutory and not a final judgment. *See Veazy*, 231 N.C. at 661-62, 57 S.E.2d at 381, and *Liggett*, 113 N.C. App. at 23, 437 S.E.2d at 677. Denial of such motion thus is properly appealable only if it "deprives the appellant of a substantial right which would be lost absent immediate review." *Bartlett*, 124 N.C. App. at 524, 477 S.E.2d at 695. A right is substantial "only when it 'will *clearly* be lost or irremediably adversely affected if the order is not reviewable before final judgment.' " *Brown v. Brown*, 77 N.C. App. 206, 208, 334 S.E.2d 506, 508 (1985), *disc. review denied*, 315 N.C. 389, 338 S.E.2d 878 (1986) (quoting *Blackwelder v. Dept. of Human Resources*, 60 N.C. App. 331, 335, 299 S.E.2d 777, 780 (1983)).

**FIRST ATL. MGMT. CORP. v. DUNLEA REALTY CO.**

[131 N.C. App. 242 (1998)]

In the case *sub judice*, plaintiff and defendants have each appealed the trial court's denial of their respective summary judgment motions. Defendants likewise have appealed the denial of their motion to strike certain affidavits from plaintiff's summary judgment motion. In each instance, the order appealed from is interlocutory and the trial court's Rule 54(b) certification is ineffective as to each because it cannot by certification make its decree "immediately appealable [if] it is not a final judgment." *Lamb v. Wedgewood South Corp.*, 308 N.C. 419, 425, 302 S.E.2d 868, 871 (1983); *see also Industries*, 296 N.C. at 491, 251 S.E.2d at 447. These appeals thus are not properly before this Court unless a substantial right has been affected. *See Cagle*, 111 N.C. App. at 247, 431 S.E.2d at 803.

As to denial of the parties' summary judgment motions, our thorough examination and consideration of the record reveals no substantial right which "could not be corrected upon appeal from final judgment." *Auction Co. v. Myers*, 40 N.C. App. 570, 573, 253 S.E.2d 362, 364 (1979). We thereby dismiss as interlocutory the appeals of plaintiff and defendants regarding denial of their respective summary judgment motions.

Concerning denial of defendants' motion to strike, we note the trial court rejected plaintiff's summary judgment motion, notwithstanding its refusal to strike consideration of certain affidavits in ruling thereon. In addition, this Court hereinabove has dismissed plaintiff's appeal of denial of its summary judgment motion. Suffice it to state we perceive no right, and certainly no "substantial" right, of defendants subject to being lost absent immediate appeal, *see id.*, of denial of their motion to strike. *See also Privette v. Privette*, 230 N.C. 52, 53, 51 S.E.2d 925, 926 (1949) (no substantial right "likely to be impaired or seriously imperiled" by denial of motion to strike allegations in motion before the court which "merely raises questions of fact for the judge to decide"). Accordingly, that appeal is likewise dismissed.

[2] However, the entry of partial summary judgment in favor of defendants on plaintiff's claim of unfair and deceptive trade practices is dispositive of that claim. While interlocutory in that other claims remain outstanding among the parties, the partial summary judgment order thus is immediately appealable provided 1) the trial court certified pursuant to Rule 54(b) that "there [wa]s no just reason to delay the appeal," *Bartlett*, 124 N.C. App. at 524, 477 S.E.2d at 695; *see also DKH Corp.*, 348 N.C. at 585, 500 S.E.2d at 668, and 2) this Court con-

**FIRST ATL. MGMT. CORP. v. DUNLEA REALTY CO.**

[131 N.C. App. 242 (1998)]

cludes such certification was appropriate. *See McNeil*, 111 N.C. App. at 264, 431 S.E.2d at 869 (Rule 54(b) "certification is not dispositional when the order appealed from is interlocutory"); *see also Fraser v. Di Santi*, 75 N.C. App. 654, 655, 331 S.E.2d 217, 218, *disc. review denied*, 315 N.C. 183, 337 S.E.2d 856 (1985) (interlocutory appeal dismissed which did not "affect [appellant's] substantial rights," notwithstanding trial court's Rule 54(b) certification, because court's finding "must be construed [by this Court] in light of G.S. § 7A-27 and . . . well-settled case law concerning interlocutory appeals"), and *Henderson v. LeBauer*, 101 N.C. App. 255, 264, 399 S.E.2d 142, 147, *disc. review denied*, 328 N.C. 731, 404 S.E.2d 868 (1991) (no substantial right affected and interlocutory appeal "not immediately appealable, even if the trial court has attempted to certify it for appeal under Rule 54(b)").

In the case *sub judice*, the trial court certified there was "no just reason [to] delay" plaintiff's appeal because "of the finality of [the trial court's order] with respect to the plaintiff's unfair and deceptive trade practices claim for relief, an integral part of the plaintiff's case . . . ." We therefore consider the propriety of the trial court's certification.

Initially, we note with approval that the trial court's order sets forth the basis upon which it determined there existed "no just reason to delay," thus facilitating appellate review. *See In re Rogers*, 297 N.C. 48, 56, 253 S.E.2d 912, 917 (1979) (trial court's detailing of the facts upon which it based its decision facilitated judicial review).

In effect, the trial court concluded a substantial right of defendants would be adversely affected absent immediate appeal. While perhaps not the sole consideration, we hold application of the substantial right analysis was prerequisite to the court's decision regarding Rule 54(b) certification that there existed ".no just reason to delay the appeal." *See Fraser*, 75 N.C. App. at 655, 331 S.E.2d at 218 (interlocutory appeal which did not "affect [appellant's] substantial rights" dismissed notwithstanding trial court's Rule 54(b) certification), and *Henderson*, 101 N.C. App. at 264, 399 S.E.2d at 147; *see also South Blvd. Video & News v. Charlotte Zoning Bd. of Adjust.*, 129 N.C. App. 282, 498 S.E.2d 623, 628, *disc. review denied and appeal dismissed*, 348 N.C. 501, —— S.E.2d —— (1998) ("statutes relating to the same subject should be construed *in [pari] materia*, in such a way as to give effect, if possible, to all provisions without destroying the meaning of the statutes involved") (citations omitted).

Accordingly, the trial court properly integrated this consideration into its order.

The sole issue which remains is whether the court correctly concluded a substantial right of defendants would be significantly impaired absent immediate appeal. Whether or not a substantial right will be prejudiced by delay of an interlocutory appeal generally must be decided on "a case by case basis." *Hoots v. Pryor*, 106 N.C. App. 397, 401, 417 S.E.2d 269, 272, *disc. review denied*, 332 N.C. 345, 421 S.E.2d 148 (1992). In addition,

> [i]t is usually necessary to resolve the question in each case by considering the particular facts of that case and the procedural context in which the order from which the appeal is sought is entered.

*Bernick v. Jurden*, 306 N.C. 435, 439, 293 S.E.2d 405, 408 (1982) (quoting *Waters v. Personnel, Inc.*, 294 N.C. 200, 208, 240 S.E.2d 338, 343 (1978)).

The determination of appealability under the substantial right exception is a two step process. *Hoots*, 106 N.C. App. at 401, 417 S.E.2d at 272. First, the right in question must qualify as "substantial," and second, enforcement of that right, absent immediate appeal, must be "lost, prejudiced or be less than adequately protected by exception to entry of the interlocutory order." *Id.* (quoting *J & B Slurry Seal Co. v. Mid-South Aviation, Inc.*, 88 N.C. App. 1, 6, 362 S.E.2d 812, 815 (1987)).

The avoidance of "one trial on the disputed issues is not normally a substantial right that would allow an interlocutory appeal." *Green v. Duke Power Co.*, 305 N.C. 603, 606, 290 S.E.2d 593, 595 (1982) (citations omitted). Further,

> the possibility of undergoing a second trial affects a substantial right only when the same issues are present in both trials, creating the possibility that a party will be prejudiced by different juries in separate trials rendering inconsistent verdicts on the same factual issue.

*Id.* at 608, 290 S.E.2d at 596.

In the case *sub judice*, plaintiff's claims of "Fraudulent Misrepresentation and Nondisclosure" and of "Unfair and Deceptive Trade Practices" rest upon nearly identical factual allegations.

Moreover, in order for plaintiff to prevail on these claims, a jury would be required to render essentially identical factual determinations in plaintiff's favor. *See Bhatti v. Buckland*, 328 N.C. 240, 243, 400 S.E.2d 440, 442-43 (1991) (proof of fraud necessarily constitutes violation of the prohibition against unfair and deceptive acts). While a decision as to whether the conduct of defendants constituted an unfair and deceptive trade practice would be for the court, *see Love v. Keith*, 95 N.C. App. 549, 554, 383 S.E.2d 674, 677 (1989), *overruled on other grounds*, 342 N.C. 133, 463 S.E.2d 199 (1995), the underlying conduct supporting that claim and plaintiff's claim of fraud would remain virtually the same. Hence, dismissal herein of plaintiff's appeal of the trial court's grant of summary judgment on plaintiff's unfair and deceptive trade practice claim would "raise the possibility of inconsistent verdicts in later proceedings." *Hoots*, 106 N.C. App. at 402, 417 S.E.2d at 273.

For example, it is conceivable that at trial on plaintiff's fraud claim, a jury could find defendants failed to commit the misrepresentations alleged. If, on appeal from that verdict, plaintiff was to renew its appeal regarding the grant of summary judgment on the unfair and deceptive trade practices claim and we determined the latter to have been error, a second trial would be required against defendants on the selfsame facts, at which trial a second jury conceivably could reach a verdict inconsistent with the first. *See id.*; *see also Webb v. Triad Appraisal and Adjustment Service, Inc.*, 84 N.C. App. 446, 449, 352 S.E.2d 859, 861-62 (1987) (plaintiff's allegations supportive of finding of fraud as well as finding of unfair and deceptive trade practices; thus she had "a substantial right to have [each cause] tried at the same time by the same judge and jury").

In short, the trial court correctly determined a substantial right of plaintiff might be affected by delaying its appeal of the grant of defendants' partial summary judgment motion until adjudication of all claims herein. The court thus properly certified pursuant to Rule 54(b) that there was "no just reason to delay" plaintiff's appeal. We therefore affirm that determination of the trial court and address plaintiff's appeal on its merits.

II.

[3] Summary judgment is appropriately granted if:

the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.

N.C.R. Civ. P. 56(c). A summary judgment movant bears the burden of establishing the lack of any triable issue, and may do so by:

> proving that an essential element of the opposing party's claim is nonexistent, or by showing through discovery that the opposing party cannot produce evidence to support an essential element of his claim . . . . All inferences of fact from the proofs offered at the hearing must be drawn against the movant and in favor of the party opposing the motion.

*Boudreau v. Baughman*, 322 N.C. 331, 342-43, 368 S.E.2d 849, 858 (1988). We hold defendants have failed to meet their burden.

Chapter 75 of the North Carolina General Statutes prohibits unfair and deceptive acts which undermine ethical standards and good faith dealings between parties engaged in business transactions. *See* N.C.G.S. §§ 75-1.1 through 75-89 (1994); *Pleasant Valley Promenade v. Lechmere, Inc.*, 120 N.C. App. 650, 657, 464 S.E.2d 47, 54 (1995). A trade practice is unfair if it "is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Johnson v. Insurance Co.*, 300 N.C. 247, 263, 266 S.E.2d 610, 621 (1980), *overruled on other grounds, Myers & Chapman, Inc. v. Thomas G. Evans, Inc.*, 323 N.C. 559, 374 S.E.2d 385 (1988). Further, a trade practice is deceptive if it "possesse[s] the tendency or capacity to mislead, or create[s] the likelihood of deception." *Forsyth Memorial Hospital v. Contreras*, 107 N.C. App. 611, 614, 421 S.E.2d 167, 170 (1992), *disc. review denied*, 333 N.C. 344, 426 S.E.2d 705 (1993) (citations omitted).

To prevail on a claim of unfair and deceptive trade practices, a plaintiff must show: (1) defendants committed an unfair or deceptive act or practice; (2) in or affecting commerce; and (3) that plaintiff was injured thereby. *See Canady v. Mann*, 107 N.C. App. 252, 260, 419 S.E.2d 597, 602 (1992); N.C.G.S. § 75-1.1 (1994). The plaintiff must also establish it "suffered actual injury as a proximate result of defendants' misrepresentations" or unfair conduct. *See Ellis v. Smith-Broadhurst, Inc.*, 48 N.C. App. 180, 184, 268 S.E.2d 271, 273-74 (1980); N.C.G.S. § 75-1.16 (1994). Once the plaintiff has presented evidence in support of each of these elements, the question whether defendants committed the alleged acts "is a question [of fact] for the jury;" the court must then determine as a matter of law whether the

FIRST ATL. MGMT. CORP. v. DUNLEA REALTY CO.

[131 N.C. App. 242 (1998)]

"proven facts constitute an unfair or deceptive trade practice." *See* *Love*, 95 N.C. App. at 554, 383 S.E.2d at 677.

The parties do not dispute that sale of property management accounts would fall within the purview of G.S. § 75-1.1 as being "in or affecting commerce." *See, e.g., United Roasters, Inc. v. Colgate-Palmolive Co.*, 485 F. Supp. 1041 (E.D.N.C. 1979) (applying G.S. § 75-1.1 to a bulk sale of business' assets). Nor is there any argument that plaintiff failed to present sufficient evidence of causation regarding damages. Neither is it argued that the actions of Harris would not be attributable to the other defendants. Rather, defendants vigorously contend plaintiff failed to present evidence that the conduct of Harris constituted an unfair or deceptive trade practice.

In his affidavit, Thompson stated:

At the closing, various documents were executed which included the Acquisition Agreement. At no time during the closing or prior to the closing did the Defendants or anyone else inform me or any representative acting on behalf of the Plaintiff that the Defendant Harris was aware prior to the closing that owners of property management accounts which were to be sold to the Plaintiff were going to transfer those accounts to a competitor known as PMI. During the closing, I specifically asked Harris if there was any information about the status of the accounts which we needed to know. In response to this question, Harris stated that we knew everything that he knew. . . .

If I had been informed prior to or at the closing of the information which Harris knew . . . I would not have agreed to close the transaction and would certainly not have paid the purchase price to the corporate Defendant. . . .

I knew that, as a result of a loss of [the accounts], the Plaintiff would have a substantial negative monthly cash flow. In fact, that has occurred, and the Plaintiff has continued to lose money on a monthly basis.

In addition, the deposition of Harris contained the following:

Q:  Well, [PMI] told you during that conversation that there would be some accounts leaving Dunlea Realty and going to his business; Is that Correct?

A: He said there were a couple of accounts that wanted to transfer.

. . . .

Q: Did you say, "[PMI], how many accounts are you talking about?"

A: I can tell you what I said if you'd like. I said, "[PMI], fax over some paper work, and I'll look at it" . . . .

. . . .

Q: But you did not inform [First Atlantic] of the April 3 conversation; Right?

A: Right.

. . . .

Q: Had you alerted anyone at Dunlea's Office that you had told [PMI] to fax you that information?

A: No.

Q: Had you told anyone associated with Dunlea on the morning of April 4, 1995, and prior to the closing of your conversation with [PMI]?

A: No.

A misrepresentation may constitute an unfair and deceptive trade practice under G.S. § 75-1.1, *see Hardy v. Toler*, 288 N.C. 303, 311, 218 S.E.2d 342, 347 (1975), but deliberate acts of deceit or bad faith need not be shown. *Contreras*, 107 N.C. App. at 614, 421 S.E.2d at 170. Rather, a party's words or conduct must possess the "tendency or capacity to mislead" or create the "likelihood of deception." *Id.*

Viewing all inferences of fact against defendants, *see Boudreau*, 322 N.C. at 342-43, 368 S.E.2d at 858, we conclude the statements of Harris to Thompson concerning the status of the accounts may properly be considered deceptive in view of evidence that Harris knew the list of the accounts attached to the Agreement did not accurately represent the accounts which plaintiff believed it was purchasing. *See Kron Medical Corp. v. Collier Cobb & Associates*, 107 N.C. App. 331, 339, 420 S.E.2d 192, 196, *disc. review denied*, 333 N.C. 168, 424 S.E.2d 910 (1992) (failure to disclose information may be tantamount to misrepresentation and thus constitute an unfair or deceptive trade prac-

tice). Thus, assuming for purposes of summary judgment that Harris made the alleged representations to plaintiff, those statements of Harris "creat[ed] the likelihood of deception" and constituted sufficient evidence of an unfair and deceptive trade practice. *See Contreras*, 107 N.C. App. at 614, 421 S.E.2d at 170.

Although Harris asserted in his deposition that he "didn't take [PMI] seriously on the account transfers," it is immaterial whether he misrepresented the status of the accounts out of negligence and in good faith, or without intent to mislead. *See, e.g., Forbes v. Par Ten Group, Inc.*, 99 N.C. App. 587, 601, 394 S.E.2d 643, 651 (1990), *disc. review denied*, 328 N.C. 89, 402 S.E.2d 824 (1991) ("that defendants may have made misrepresentations negligently and in good faith, in ignorance of their falsity, and without intent to mislead, affords no defense" in actions under G.S. § 75-1.1).

Notwithstanding, defendants maintain Harris may not be chargeable with a misrepresentation on 4 April 1995 since "all of the documents, including the Acquisition Agreement, the Bill of Sale, the Assignment of Rights . . . were expressly made effective April 1, 1995." More specifically, defendants contend that in order for Harris to have misled plaintiff, his failure to disclose on 4 April 1995 would of necessity have to be applied to the earlier date "when the contract was created and the obligations of the parties established." This argument is unfounded.

The Agreement was not actually "created" or executed until closing of the transaction on 4 April 1995. It is undisputed that the closing documents were executed only after the accounts were identified and verified on 4 April 1995. Hence, the very documents upon which defendants rely to assert the 1 April 1995 effective date were procured, viewing the evidence in the light most favorable to plaintiff, *Boudreau*, 322 N.C. at 343, 368 S.E.2d at 858, by Harris' wilful nondisclosure at closing of the pending transfer of certain of the accounts.

[4] Likewise, defendants' arguments relying upon the Uniform Commercial Code (the U.C.C.) are inapposite because property management accounts do not constitute "goods" within the meaning of Article 2 of the U.C.C. (*See* N.C.G.S. § 25-2-105 (1995)). Article 2 is therefore inapplicable to the sale of the accounts.

[5] Finally, defendants assert plaintiff "elected as its principal relief the remedy of rescission," and that, as a consequence, it cannot sue for damages under G.S. § 75-1.1 because these remedies are "incon-

sistent." *See United Laboratories, Inc. v. Kuykendall*, 335 N.C. 183, 190-91, 437 S.E.2d 374, 378-79 (1993).

Defendant is correct that it is well established in our jurisprudence that

> [w]hen a person discovers that he has been fraudulently induced to purchase property he must choose between two inconsistent remedies. He may repudiate the contract of sale, tender a return of the property, and recover the value of the consideration with which he parted; or, he may affirm the contract, retain the property, and recover the difference between its real and its represented value. He may not do both. Once made, the election is final . . . .

*Taylor v. Triangle Porsche-Audi, Inc.*, 27 N.C. App. 711, 717, 220 S.E.2d 806, 811 (1975), *disc. review denied*, 289 N.C. 619, 223 S.E.2d 396 (1976) (citations omitted).

In a fraud case, damage is the amount of loss caused by the difference between what was received and what was promised through a false representation. *See River Birch Associates v. City of Raleigh*, 326 N.C. 100, 130, 388 S.E.2d 538, 556 (1990). The remedy of rescission, as opposed to the notion of damage, seeks to undo the transaction and return the parties to their original status. *Triangle Porsche-Audi*, 27 N.C. App. at 717, 220 S.E.2d at 811.

Plaintiff's complaint reveals it seeks damages under G.S. § 75-1.1, relying upon rescission in the alternative. However, North Carolina law does not support defendants' contention that election between remedies must be made at the time of filing a complaint. *See* N.C.G.S. § 1A-1, Rule 8(e) (1990) ("party may set forth two or more statements of a claim . . . alternatively or hypothetically").

The more recent trend in Chapter 75 cases has been to require election of remedies prior to instruction of the jury, *see Winant v. Bostic*, 5 F.3d 767, 772, 775-76 (4th Cir. 1993) (plaintiff filing action seeking damages based upon G.S. § 75-1.1, or alternatively recission, not entitled to trebling of award since plaintiff later elected restitution and district court instructed jury upon same), or after return of the jury verdict, *see Mapp v. Toyota World, Inc.*, 81 N.C. App. 421, 427, 344 S.E.2d 297, 301, *disc. review denied*, 318 N.C. 283, 347 S.E.2d 464 (1986) (plaintiff allowed to elect remedy between punitive damages or treble damages under G.S. § 75-1.1 after jury verdict). Accordingly, entry of summary judgment against plaintiff on its

unfair and deceptive trade practices claim would be inappropriate on the basis of inconsistent remedies.

To summarize, plaintiff's appeal of the denial of its motion for partial summary judgment, and defendants' appeals of the denial of their motions to strike and for partial summary judgment are each dismissed. However, defendants failed to overcome plaintiff's *prima facie* showing of an unfair and deceptive trade practice, *see Boudreau*, 322 N.C. at 342-43, 368 S.E.2d at 858, and the trial court's grant of partial summary judgment in favor of defendants on plaintiff's claim of unfair and deceptive trade practices is reversed.

Dismissed in part; reversed in part.

Judges GREENE and MARTIN, M., concur.