RICHARD GILES AND WIFE, JOANN GILES, PLAINTIFF-APPELLANTS v. FIRST VIRGINIA CREDIT SERVICES, INC., AND PROFESSIONAL AUTO RECOVERY, INC., DEFENDANT-APPELLEES

No. COA00-1252

(Filed 5 March 2002)

**1. Appeal and Error— appealability—partial summary judgment—claim determined**

A trial judge's grant of partial summary judgment for defendant credit company determined plaintiff's claim for wrongful conversion and repossession of plaintiff's automobile, making it a

---

final judgment as to that claim and therefore reviewable on appeal.

**2. Uniform Commercial Code— secured transactions—repossession of collateral—breach of peace—definition**

The definition of breach of the peace in the context of a self-help repossession pursuant to N.C.G.S. § 25-9-503 (1999) (replaced by § 25-9-609) is broader than the criminal law definition, and whether a breach of the peace occurred should be based upon the reasonableness of the time and manner of the repossession. When there is no confrontation, five factors are balanced: where the repossession occurred; the debtor's express or constructive consent; the reactions of third parties; the type of premises entered; and the creditor's use of deception.

**3. Uniform Commercial Code— secured transactions—wrongful repossession—summary judgment**

The trial court did not err by granting summary judgment to defendant credit company on a claim for wrongful conversion and repossession where defendant contended that whether a breach of the peace had occurred is a question for the jury but there was no factual dispute about what happened during the repossession. Defendant recovery company went into plaintiff's driveway early in the morning, decreasing the possibility of confrontation; the recovery company did not enter plaintiff's home or any enclosed area; consent to repossession was expressly given in the contract with the credit company; although a neighbor was awakened, plaintiffs were not and there was no confrontation; and there was no evidence that any type of deception was used in repossessing the vehicle.

**4. Uniform Commercial Code— secured transaction—default—check mailed before repossession, received after**

The trial court did not err by granting summary judgment for a creditor in a wrongful repossession action on the issue of whether the account was in default when the automobile was repossessed. If the default is not cured before repossession, the fact that the check was mailed before the repossession is immaterial when it is not received until after the collateral is · repossessed.

**5. Uniform Commercial Code— secured transactions—statutory repossession scheme—not unconstitutional—no state action**

State provisions allowing a secured party to repossess collateral without notice or judicial process, and a waiver in the finance contract in this case, were both constitutional. There was no participation by any state official; N.C.G.S. § 25-9-503 (1999) codifies a right existing at common law and is wholly self-executing. There was no state action.

Appeal by plaintiffs from order signed 15 June 2000 by Judge Forrest Donald Bridges in Superior Court, Lincoln County. Heard in the Court of Appeals 12 September 2001.

*Sigmon, Clark, Mackie, Hutton, Hanvey & Ferrell, P.A., by E. Fielding Clark, II, for plaintiff-appellants.*

*Kirschbaum, Nanney, Brown & Keenan, P.A., by Pamela P. Keenan and Stephen B. Brown, for defendant-appellee First Virginia Credit Services, Inc.*

*Hedrick, Eatman, Gardner & Kincheloe, L.L.P., by Sara H. Young, for defendant-appellee Professional Auto Recovery, Inc.*

McGEE, Judge.

Richard Giles and Joann Giles (plaintiffs) appeal the trial court's order granting First Virginia Credit Services, Inc.'s (First Virginia) motion for summary judgment in part.

Plaintiffs filed a complaint against defendants First Virginia and Professional Auto Recovery, Inc. (Professional Auto Recovery) for wrongful repossession of an automobile. Plaintiffs alleged in an amended complaint that: (1) First Virginia and Professional Auto Recovery wrongfully converted and/or repossessed the automobile and plaintiffs' personal property located within the automobile; (2) plaintiffs made a payment on the account which First Virginia accepted immediately prior to First Virginia's repossession of the automobile and which First Virginia subsequently cashed and applied to plaintiffs' account after the repossession; (3) removal of the automobile constituted breach of the peace in violation of N.C. Gen. Stat. § 25-9-503; (4) N.C. Gen. Stat. § 25-9-503 is unconstitutional; and (5) First Virginia was negligent in hiring Professional Auto Recovery and

committed unfair or deceptive trade practices entitling plaintiffs to treble damages.

First Virginia filed an answer stating the automobile was repossessed due to the default of Joann Giles in making the payments to First Virginia on a loan secured by the automobile. First Virginia stated that N.C. Gen. Stat. § 25-9-503 permitted a secured lender to peaceably repossess its collateral upon default by a debtor and that such repossession could not, as a matter of law, constitute conversion of the collateral or an unfair or deceptive trade practice. First Virginia moved to dismiss plaintiffs' complaint for failure to state a claim pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6).

Joann Giles entered into an installment sale contract on or about 18 January 1997 for the purchase of an automobile. The contract was assigned to First Virginia, which obtained a senior perfected purchase money security interest in the automobile. The terms of the contract required Joann Giles to make sixty regular monthly payments to First Virginia. The contract stated that Joann Giles' failure to make any payment due under the contract within ten days after its due date would be a default. The contract contained an additional provision agreed to by Joann Giles that stated:

> If I am in default, you may consider all my remaining payments to be due and payable, without giving me notice. I agree that your rights of possession will be greater than mine. I will deliver the property to you at your request, or you may use lawful means to take it yourself without notice or other legal action. . . .
>
> . . .
>
> If you excuse one default by me, that will not excuse later defaults.

During the early morning hours of 27 June 1999, Professional Auto Recovery, at the request of First Virginia, repossessed the locked automobile from plaintiffs' front driveway. According to First Virginia, the account of Joann Giles was in arrears for payments due on 2 May 1999 and 2 June 1999, and pursuant to the terms of the contract, repossession was permitted.

In an affidavit filed by plaintiffs in opposition to First Virginia's motion for summary judgment, plaintiffs' neighbor, Glenn A. Mosteller (Mr. Mosteller), stated that he was awakened around 4:00 a.m.

by the running of a loud diesel truck engine on the road outside my house. Evidentially [sic] the truck was stopped because I lay in bed for a while and did not get up. I then became concerned and went to the window to see what was going on. At this time I saw a large rollback diesel truck with a little pickup truck on the truck bed behind it. The truck only had its parking lights on. The truck . . . started going toward the Giles' yard. It still only had its parking lights on. About that time, a man jumped out of the truck and ran up the Giles' driveway. Their car was parked up at their house. Then the car came flying out back down the driveway making a loud noise and started screeching off . . . . At about the same time, the rollback also pulled off real fast making a real loud diesel noise and went down [the road]. . . . I got to the phone, called the Giles and told them someone was stealing their car. . . . My lights were on . . . and the Giles' lights were on and that portion of our neighborhood had woken up. Richard Giles came out in his yard and we hollared a few words back and forth and I jumped in my truck . . . to try to get the police. About 5 minutes later a police car came up and pulled into the Giles' yard. Then another police car came then a Sheriff's Deputy car came. Then another police car came. . . . There was a great commotion going on out in the street and in our yard all to the disturbance of the quietness and tranquility of our neighborhood. . . . It scared me and it scared the Giles.

Joann Giles stated in a deposition that she was awakened by Mr. Mosteller's telephone call in which he told her that someone was stealing her car. She stated she ran to see if the automobile was parked outside and confirmed that it was gone. Joann Giles testified she woke up her husband and gave him the telephone; he ran outside into the yard and heard Mr. Mosteller "hollering" at him from across the street. Plaintiffs testified in their depositions that neither of them saw the car being repossessed but were only awakened by their neighbor after the automobile was gone. During the actual repossession, no contact was made between Professional Auto Recovery and plaintiffs, nor between Professional Auto Recovery and Mr. Mosteller.

First Virginia filed a motion for summary judgment pursuant to N.C. Gen. Stat. § 1A-1, Rule 56. Plaintiffs filed a motion to amend their complaint pursuant to N.C. Gen. Stat. § 1A-1, Rule 15. These motions were heard by the trial court on 17 May 2000. In an order dated 15 June 2000, the trial court: (1) granted plaintiffs' motion to amend their

complaint; (2) granted First Virginia's motion for summary judgment in part, stating there was no genuine issue as to any material fact as to the conversion or repossession of the motor vehicle; (3) denied First Virginia's motion for summary judgment in part, concluding that there were genuine issues of material fact as to the reasonableness of the taking into possession or conversion of plaintiffs' personal property located within the automobile and related damages; (4) declined plaintiffs' request to declare N.C. Gen. Stat. § 25-9-503 unconstitutional; and (5) ruled on other motions not at issue in this appeal. The trial court certified in an order filed 6 July 2000 that its decisions in the 15 June 2000 order constituted a final judgment as to some of plaintiffs' claims and found the order was immediately appealable pursuant to N.C. Gen. Stat. § 1A-1, Rule 54(b). Plaintiffs appeal.

I.

**[1]** We must first determine whether plaintiffs' appeal is properly before this Court in that the trial court's order does not resolve all issues among the parties and is therefore interlocutory. *Veazey v. Durham*, 231 N.C. 357, 361-62, 57 S.E.2d 377, 381 (1950). "A grant of partial summary judgment, because it does not completely dispose of the case, is an interlocutory order from which there is ordinarily no right of appeal." *Liggett Group v. Sunas*, 113 N.C. App. 19, 23, 437 S.E.2d 674, 677 (1993). *See also* N.C. Gen. Stat. § 1A-1, Rule 54(a) (1999). The purpose of this rule is "to prevent fragmentary, premature and unnecessary appeals" by allowing the trial court to determine all the issues in the case before it is presented to the appellate courts for review. *Waters v. Personnel, Inc.*, 294 N.C. 200, 207, 240 S.E.2d 338, 343 (1978).

There are, however, two circumstances in which a party may appeal an interlocutory order. First, an immediate appeal may lie if the order of the trial court is final as to some but not all of the claims or parties, and the trial court certifies the case for immediate appeal pursuant to N.C. Gen. Stat. § 1A-1, Rule 54(b) (1999). Second, an appeal is permitted where the order appealed from affects a substantial right of the parties. N.C. Gen. Stat. § 7A-27(d)(1) (1999) and N.C. Gen. Stat. § 1-277 (1999). *See also Davidson v. Knauff Ins. Agency*, 93 N.C. App. 20, 24, 376 S.E.2d 488, 490-91, *disc. review denied*, 324 N.C. 577, 381 S.E.2d 772 (1989).

A Rule 54(b) certification is reviewable by our Court on appeal because a "trial court's denomination of its decree [as] 'a final . . . judgment does not make it so,' if it is not such a judgment." *First Atl.*

*Mgmt. Corp. v. Dunlea Realty Co.*, 131 N.C. App. 242, 247, 507 S.E.2d 56, 60 (1998) (quoting *Industries, Inc. v. Insurance Co.*, 296 N.C. 486, 491, 251 S.E.2d 443, 447 (1979)). Although the trial court's determination that there is no just reason for delay of an appeal is accorded great deference, it does not bind our appellate courts because "ruling on the interlocutory nature of appeals is properly a matter for the appellate division, not the trial court." *Estrada v. Jaques*, 70 N.C. App. 627, 640, 321 S.E.2d 240, 249 (1984). *See also DKH Corp. v. Rankin-Patterson Oil Co.*, 348 N.C. 583, 500 S.E.2d 666 (1998).

In this case, the trial court granted partial summary judgment for First Virginia on the issue of wrongful conversion and/or repossession of plaintiffs' automobile, and refused plaintiffs' request to declare N.C. Gen. Stat. § 25-9-503 unconstitutional. Additionally, the trial court denied First Virginia's motion for summary judgment on the issue of wrongful conversion and/or taking into possession plaintiffs' personal property located within the automobile, concluding that there were issues of material fact as to the reasonableness of those actions. The trial court stated that "these rulings constitute a final Judgment to some but not all of the various claims in the action and that there is no justifiable reason for delay." A judgment is final when it "in effect determines the action[.]" N.C. Gen. Stat. § 1-277. The trial court's judgment granting First Virginia's motion for summary judgment determined plaintiffs' claim for wrongful conversion and/or repossession of plaintiffs' automobile, making it a final judgment as to this claim, and we therefore may review this issue on appeal.

Before turning to the merits of plaintiffs' appeal, we note that First Virginia filed a motion to dismiss plaintiffs' appeal based upon alleged violations of the N.C. Rules of Appellate Procedure. We deny First Virginia's motion to dismiss and exercise our discretion under N.C.R. App. P. 2 to consider the merits of plaintiffs' appeal.

II.

[2] By their first assignment of error, plaintiffs argue the trial court erred in granting in part First Virginia's motion for summary judgment dismissing plaintiffs' claim for wrongful conversion and/or repossession of their automobile. Plaintiffs specifically argue that (1) the determination of whether a breach of the peace occurred in violation of N.C. Gen. Stat. § 25-9-503 is a question for the jury and not one to be determined by summary judgment, and (2) there is a dispute as to whether plaintiffs were in default.

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (1999).

A.

Plaintiffs first argue the trial court erred in granting partial summary judgment to First Virginia because the issue of whether a breach of the peace occurred is a question for the jury.

Our Courts have long recognized the right of secured parties to repossess collateral from a defaulting debtor without resort to judicial process, so long as the repossession is effected peaceably. *See e.g., Rea v. Credit Corp.*, 257 N.C. 639, 641, 127 S.E.2d 225, 227 (1962); *Freeman v. Acceptance Corp.*, 205 N.C. 257, 258, 171 S.E. 63, 63 (1933). Our General Assembly codified procedures for self-help repossessions, including this common law restriction, in the North Carolina Uniform Commercial Code (UCC). N.C. Gen. Stat. § 25-9-503 (1999), in effect at the time of the repossession in this case, reads in part,

> Unless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action.

The General Assembly did not define breach of the peace but instead left this task to our Courts, and although a number of our appellate decisions have considered this self-help right of secured parties, none have clarified what actions constitute a breach of the peace.

N.C. Gen. Stat. § 25-9-503, at issue in this appeal, has been replaced by N.C. Gen. Stat. § 25-9-609 (Interim Supp. 2000) (Effective 1 July 2001), which states that a secured party, after default, may take possession of the collateral without judicial process, if the secured party proceeds without breach of the peace. In Number 3. of the Official Comment to the new statutory provision, our General Assembly continued to state that, "[l]ike former Section 9-503, this section does not define or explain the conduct that will constitute a breach of the peace, leaving that matter for continuing development by the courts." N.C.G.S. § 25-9-609. The General Assembly clearly may further define and/or limit the time, place and conditions under which a repossession is permitted, but it has not yet done so.

In a pre-UCC case, *Rea v. Credit Corp.*, 257 N.C. 639, 127 S.E.2d 225 (1962), a defaulting debtor left his locked automobile on his front lawn. An agent of the mortgagee went to the debtor's home to repossess the automobile, saw the automobile parked on the lawn, found no one at home, and asked a neighbor where the debtor was. The agent was told no one was at home and he thereafter opened the automobile door with a coat hanger and removed the automobile on a wrecker. Our Supreme Court found that this evidence could not warrant a finding by a jury that the mortgagee's agent wrongfully took possession of the automobile because no breach of the peace occurred. In *Rea*, although our Supreme Court did not define breach of the peace, it reiterated the common law rule that the right of self-help repossession "must be exercised without provoking a breach of the peace[.]" *Id.* at 641-42, 127 S.E.2d at 227. Our Supreme Court thought the law "well stated" by the South Carolina Supreme Court in the case of *Willis v. Whittle*, that

> "if the mortgagee finds that he cannot get possession without committing a breach of the peace, he must stay his hand, and resort to the law, for the preservation of the public peace is of more importance to society than the right of the owner of a chattel to get possession of it."

*Rea*, 257 N.C. at 641-42, 127 S.E.2d at 227 (quoting *Willis v. Whittle*, 82 S.C. 500, 64 S.E. 410 (1909)).

In a case addressing the issue of whether prior notice of repossession is required under N.C. Gen. Stat. § 25-9-503, our Court stated that repossession can be accomplished under the statute without prior notice so long as the repossession is peaceable. *Everett v. U.S. Life Credit Corp.*, 74 N.C. App. 142, 144, 327 S.E.2d 269, 269 (1985). Without specifically defining breach of the peace, our Court explained that "[o]f course, if there is confrontation at the time of the attempted repossession, the secured party must cease the attempted repossession and proceed by court action in order to avoid a 'breach of the peace.' " *Id.* at 144, 327 S.E.2d at 270. This indicates, as argued by First Virginia, that confrontation is at least an element of a breach of the peace analysis.

In that breach of the peace has not heretofore been clarified by our appellate courts, but instead only vaguely referred to, we must construe this term as the drafters intended. "In construing statutes the court should always give effect to the legislative intent." *Electric Service v. City of Rocky Mount*, 20 N.C. App. 347, 348, 201 S.E.2d 508,

509, *aff'd,* 285 N.C. 135, 203 S.E.2d 838 (1974). "The intent of the Legislature may be ascertained from the phraseology of the statute as well as the nature and purpose of the act and the consequences which would follow from a construction one way or another." *Campbell v. Church,* 298 N.C. 476, 484, 259 S.E.2d 558, 564 (1979). In determining what conduct constitutes a breach of the peace we consider each of these contributing elements.

The phrase "breach of the peace" is defined in Black's Law Dictionary as the "criminal offense of creating a public disturbance or engaging in disorderly conduct, particularly by an unnecessary or distracting noise." Black's Law Dictionary 183 (7th ed. 1999). The phrase is also commonly understood to mean a "violation of the public order as amounts to a disturbance of the public tranquility, by act or conduct either directly having this effect, or by inciting or tending to incite such a disturbance of the public tranquility." 12 Am. Jur. 2d *Breach of Peace* § 5 (1997).

In a criminal case, our Supreme Court defined breach of the peace as "a disturbance of public order and tranquility by act or conduct not merely amounting to unlawfulness but tending also to create public tumult and incite others to break the peace." *State v. Mobley,* 240 N.C. 476, 482, 83 S.E.2d 100, 104 (1954). *See also Perry v. Gibson,* 247 N.C. 212, 100 S.E.2d 341 (1957) (wrongful death case stating the same definition for breach of the peace). Such " '[a] breach of the peace may be occasioned by an affray or assault, by the use of profane and abusive language by one person toward another on a public street and in the presence of others, or by a person needlessly shouting and making loud noise.' " *Mobley,* 240 N.C. at 482, 83 S.E.2d at 104 (quoting 4 Am. Jur. *Arrest* § 30). A breach of the peace, as used in Chapter 19 of our General Statutes, entitled "Offenses Against Public Morals," is defined as "repeated acts that disturb the public order including, but not limited to, homicide, assault, affray, communicating threats, unlawful possession of dangerous or deadly weapons, and discharging firearms." N.C. Gen. Stat. § 19-1.1(1) (1999).

We must also consider the nature and purpose of Chapter 25 of the North Carolina General Statutes, the UCC, which is to be "liberally construed and applied to promote its underlying purposes and policies." N.C. Gen. Stat. § 25-1-102 (1999). Its stated purposes are:

(a) to simplify, clarify and modernize the law governing commercial transactions;

(b) to permit the continued expansion of commercial practices through custom, usage and agreement of the parties;

(c) to make uniform the law among the various jurisdictions.

*Id.*

In carrying out the policy of uniformity with other jurisdictions, we consider their treatment of the term of breach of the peace. While cases from other jurisdictions are not binding on our courts, they provide insight into how this term has been analyzed by other courts and therefore are instructive.

The courts in many states have examined whether a breach of the peace in the context of the UCC has occurred. Courts have found a breach of the peace when actions by a creditor incite violence or are likely to incite violence. *Birrell v. Indiana Auto Sales & Repair*, 698 N.E.2d 6, 8 (Ind. App. 1998) (a creditor cannot use threats, enter a residence without debtor's consent and cannot seize property over a debtor's objections); *Wade v. Ford Motor Credit Co.*, 668 P.2d 183, 189 (Kan. App. 1983) (a breach of the peace may be caused by an act likely to produce violence); *Morris v. First National Bank & Trust Co. of Ravena*, 254 N.E.2d 683, 686-87 (Ohio 1970) (a physical confrontation coupled with an oral protest constitutes a breach of the peace).

Other courts have expanded the phrase breach of the peace beyond the criminal law context to include occurrences where a debtor or his family protest the repossession. *Fulton v. Anchor Sav. Bank, FSB*, 452 S.E.2d 208, 213 (Ga. App. 1994) (a breach of the peace can be created by an unequivocal oral protest); *Census Federal Credit Union v. Wann*, 403 N.E.2d 348, 352 (Ind. App. 1980) ("if a repossession is . . . contested at the actual time . . . of the attempted repossession by the defaulting party or other person in control of the chattel, the secured party must desist and pursue his remedy in court"); *Hollibush v. Ford Motor Credit Co.*, 508 N.W.2d 449, 453-55 (Wis. App. 1993) (in the face of an oral protest the repossessing creditor must desist). Some courts, however, have determined that a mere oral protest is not sufficient to constitute a breach of the peace. *Clarin v. Minnesota Repossessors, Inc.*, 198 F.3d 661, 664 (8th Cir. 1999) (oral protest, followed by pleading with repossessors in public parking lot does not rise to level of breach of the peace); *Chrysler Credit Corp. v. Koontz*, 661 N.E.2d 1171, 1173-74 (Ill. App. 1996) (yelling "Don't take it" is insufficient).

If a creditor removes collateral by an unauthorized breaking and entering of a debtor's dwelling, courts generally hold this conduct to be a breach of the peace. *Davenport v. Chrysler Credit Corp.*, 818 S.W.2d 23, 29 (Tenn. App. 1991) and *General Elec. Credit Corp. v. Timbrook*, 291 S.E.2d 383, 385 (W. Va. 1982) (both cases stating that breaking and entering, despite the absence of violence or physical confrontation, is a breach of the peace). Removal of collateral from a private driveway, without more however, has been found not to constitute a breach of the peace. *Hester v. Bandy*, 627 So.2d 833, 840 (Miss. 1993). Additionally, noise alone has been determined to not rise to the level of a breach of the peace. *Ragde v. People's Bank*, 767 P.2d 949, 951 (Wash. App. 1989) (unwilling to hold that making noise is an act likely to breach the peace).

Many courts have used a balancing test to determine if a repossession was undertaken at a reasonable time and in a reasonable manner, and to balance the interests of debtors and creditors. *See e.g.*, *Clarin v. Minnesota Repossessors, Inc.*, 198 F.3d 661, 664 (8th Cir. 1999); *Davenport v. Chrysler Credit Corp.*, 818 S.W.2d 23, 29 (Tenn. App. 1991). Five relevant factors considered in this balancing test are: "(1) where the repossession took place, (2) the debtor's express or constructive consent, (3) the reactions of third parties, (4) the type of premises entered, and (5) the creditor's use of deception." *Davenport*, 818 S.W.2d at 29 (citing 2 J. White & R. Summers, *Uniform Commercial Code* § 27-6, at 575-76 (3d ed. 1988)).

Relying on the language of our Supreme Court in *Rea*, plaintiffs argue that the "guiding star" in determining whether a breach of the peace occurred should be whether or not the public peace was preserved during the repossession. *Rea*, 257 N.C. at 641-42, 127 S.E.2d at 228. Plaintiffs contend "the elements as to what constitutes a breach of the peace should be liberally construed" and urge our Court to adopt a subjective standard considering the totality of the circumstances as to whether a breach of the peace occurred.

Plaintiffs claim that adopting a subjective standard for N.C. Gen. Stat. § 25-9-503 cases will protect unwitting consumers from the "widespread use of no notice repossessions, clandestine and after midnight repossessions" and will protect "our State's commitment to law and order and opposition to vigilante policies, opposition to violence and acts from which violence could reasonably flow[.]" If a lender is not held to such a high subjective standard, plaintiffs contend that self-help repossessions should be disallowed altogether.

**GILES v. FIRST VIRGINIA CREDIT SERVS., INC.**

[149 N.C. App. 89 (2002)]

First Virginia, in contrast, argues that a breach of the peace did not occur in this case, as a matter of law, because there was no confrontation between the parties. Therefore, because the facts in this case are undisputed concerning the events during the actual repossession of the automobile, the trial court did not err in its partial grant of summary judgment.

First Virginia disputes plaintiffs' contention that a determination of whether a breach of the peace occurred should be a wholly subjective standard, because if such a standard is adopted, every determination of whether a breach of the peace occurred would hereafter be a jury question and "would run directly contrary to the fundamental purpose of the Uniform Commercial Code, which is to provide some degree of certainty to the parties engaging in various commercial transactions." Further, First Virginia argues that applying a subjective standard to a breach of the peace analysis could be detrimental to borrowers, with lenders likely increasing the price of credit to borrowers to cover the costs of having to resort to the courts in every instance to recover their collateral upon default. The standard advocated by plaintiffs would "eviscerate" the self-help rights granted to lenders by the General Assembly, leaving lenders "with no safe choice except to simply abandon their 'self help' rights altogether, since every repossession case could [result] in the time and expense of a jury trial on the issue of 'breach of the peace[.]' " Finally, First Virginia argues that a subjective standard would be detrimental to the judicial system as a whole because "[w]ith a case-by-case, wholly subjective standard . . . the number of lawsuits being filed over property repossessions could increase dramatically[.]"

Based upon our review of our appellate courts' treatment of breach of the peace in pre-UCC and UCC cases, as well as in other areas of the law, the purposes and policies of the UCC, and the treatment other jurisdictions have given the phrase, we find that a breach of the peace, when used in the context of N.C. Gen. Stat. § 25-9-503, is broader than the criminal law definition. A confrontation is not always required, but we do not agree with plaintiffs that every repossession should be analyzed subjectively, thus bringing every repossession into the purview of the jury so as to eviscerate the self-help rights duly given to creditors by the General Assembly. Rather, a breach of the peace analysis should be based upon the reasonableness of the time and manner of the repossession. We therefore adopt a balancing test using the five factors discussed above to determine whether a breach of the peace occurs when there is no confrontation.

**[3]** In applying these factors to the undisputed evidence in the case before us, we affirm the trial court's determination that there was no breach of the peace, as a matter of law. Professional Auto Recovery went onto plaintiffs' driveway in the early morning hours, when presumably no one would be outside, thus decreasing the possibility of confrontation. Professional Auto Recovery did not enter into plaintiffs' home or any enclosed area. Consent to repossession was expressly given in the contract with First Virginia signed by Joann Giles. Although a third party, Mr. Mosteller, was awakened by the noise of Professional Auto Recovery's truck, Mr. Mosteller did not speak with anyone from Professional Auto Recovery, nor did he go outside until Professional Auto Recovery had departed with the Giles' automobile. Further, neither of the plaintiffs were awakened by the noise of the truck, and there was no confrontation between either of them with any representative of Professional Auto Recovery. By the time Mr. Mosteller and plaintiffs went outside, the automobile was gone. Finally, there is no evidence, nor did plaintiffs allege, that First Virginia or Professional Auto Recovery employed any type of deception when repossessing the automobile.

There is no factual dispute as to what happened during the repossession in this case, and the trial court did not err in granting summary judgment to First Virginia on this issue.

### B.

**[4]** Plaintiffs next argue there was a factual dispute over whether or not a default occurred in the repayment of the note and therefore summary judgment was improper.

N.C. Gen. Stat. § 25-9-503 states that "unless otherwise agreed a secured party has on default the right to take possession of the collateral." The contract signed by Joann Giles stated that she would be in default if she "fail[ed] to make any payment within 10 days after its due date." Additionally, she agreed that if the bank chose to excuse a default, that would not excuse later defaults.

Plaintiffs argue in their brief to this Court that Joann Giles was "one payment behind" when her automobile was repossessed on 27 June 1999. They claim a payment was made to First Virginia before the automobile was repossessed, bringing her account up to date, but that payment was cashed and credited to Joann Giles' account two days after the repossession. Plaintiffs thus imply that because the check was ultimately received and cashed, Joann Giles' account was

not in default when the repossession occurred. This position, however, is untenable. If a default is not cured before repossession, the fact that the check was mailed before repossession is immaterial when it is not received until after the collateral is repossessed. 10 Ronald A. Anderson, *Anderson on The Uniform Commercial Code*, § 9-503:52 (3d ed. 1999 Revision).

Plaintiffs also argue in their brief that *Credit Co. v. Jordan*, 5 N.C. App. 249, 168 S.E.2d 229 (1968) "espouses the proposition that acceptance of late payments along with evidence of unconscionable or improper action on the part of the financial institution would constitute waiver or estoppel." Plaintiffs contend that First Virginia had accepted late payments in the past from Joann Giles and that First Virginia's repossession of the automobile was unconscionable; therefore, First Virginia was estopped from repossessing her automobile on 27 June 1999.

Plaintiffs' reliance on *Credit Co.*, however, is misplaced because the proposition stated by plaintiffs is taken from dicta in that case and is not binding on this Court in the case before us. Further, plaintiffs do not direct us to any evidence in the record supporting a conclusion that First Virginia intended to forbear plaintiffs' payments or that First Virginia acted unconscionably. In fact, Joann Giles agreed in the contract that acceptance of a late payment by First Virginia would not excuse a later default. Plaintiffs' argument of forbearance by First Virginia is without merit.

The trial court found, and we agree, that there is no genuine issue of material fact as to whether Joann Giles' account was in default when the automobile was repossessed. The trial court did not err in granting summary judgment to First Virginia on this issue.

Plaintiffs' first assignment of error is overruled.

III.

[5] Plaintiffs next argue that the provisions of N.C. Gen. Stat. § 25-9-503 granting a secured party the right to take possession of collateral without judicial process, without notice and/or a right to be heard, are unconstitutional as applied to the facts in this case. They further argue that the waiver of notice in the contract Joann Giles signed with First Virginia deprived her of her constitutional rights under the Fourteenth Amendment to the United States Constitution.

Plaintiffs claim that the statutory scheme providing for non-judicial repossession under N.C. Gen. Stat. § 25-9-503 constitutes state action sufficient to evoke the protection of the due process clause of the Fourteenth Amendment of the United States Constitution. As support for their position, plaintiffs rely on *Turner v. Blackburn*, 389 F.Supp. 1250 (W.D.N.C. 1975). *Turner*, however, is distinguishable from the case before us because in *Turner*, the court's determination that state action was involved, thereby requiring application of the provisions of the Fourteenth Amendment, was based upon the direct participation of the clerk of court in the statutory procedure for foreclosure and sale under deed of trust. *Id.* at 1254-58. In the case before us, however, plaintiffs cite no participation on the part of any state official in First Virginia's self-help repossession, nor can we find any in our review of the record.

Plaintiffs argue the state action in this case, requiring our Court to declare N.C. Gen. Stat. § 25-9-503 unconstitutional, is based on our state's statutory scheme permitting the Department of Motor Vehicles to title a motor vehicle, to create and perfect a lien on a motor vehicle, to transfer title of a motor vehicle when the motor vehicle is sold pursuant to a repossession, and to transfer title absent the owner's signature. Further, plaintiffs argue state action is present through our statutory scheme which provides for repossession without judicial process, where payment of any surplus from sale of the repossessed vehicle is paid to the clerk of superior court who is liable on a bond for safekeeping the funds. Except for the reference to N.C. Gen. Stat. § 25-9-503, the statutes as recited by plaintiff, do not apply to this case and will not be addressed.

A majority of the federal circuit courts have considered the question before us and are in agreement that self-help repossession pursuant to UCC provisions does not constitute "state action" within the purview of the due process provision of the Fourteenth Amendment. *Shirley v. State National Bank of Connecticut*, 493 F.2d 739 (2d Cir. 1974); *Gibbs v. Titelman*, 502 F.2d 1107 (3rd Cir. 1974), *cert. denied, Gibbs, et al. v. Garver, Director, Bureau of Motor Vehicles, et al.*, 419 U.S. 1039, 42 L. Ed. 2d 316 (1974); *James v. Pinnix*, 495 F.2d 206 (5th Cir. 1974); *Turner v. Impala Motors*, 503 F.2d 607 (6th Cir. 1974); *Nichols v. Tower Grove Bank*, 497 F.2d 404 (8th Cir. 1974); *Nowlin v. Professional Auto Sales, Inc.*, 496 F.2d 16 (8th Cir. 1974), *cert. denied,* 419 U.S. 1006, 42 L. Ed. 2d 283 (1974); *Adams v. Southern California First National Bank*, 492 F.2d 324 (9th Cir. 1973), *cert. denied,* 419 U.S. 1006, 42 L. Ed. 2d 282 (1974). While this Court is not obliged to

follow decisions from other jurisdictions, these decisions are instructive in our determination of whether there was sufficient state action in this case to sustain a challenge under the Fourteenth Amendment.

We agree with First Virginia's contention that N.C. Gen. Stat. § 25-9-503 is "wholly self-executing and takes no involvement by any state employee to fully effect its purpose." In enacting N.C. Gen. Stat. § 25-9-503, our General Assembly codified a right existing at common law; it did not delegate to private parties authority previously held by the state. Therefore, plaintiffs' argument that state action was involved in this case is without merit.

Plaintiffs also claim that the waiver of notice in the contract signed by Joann Giles is void because it deprives her of her property without notice and an opportunity to be heard, as required by the Fourteenth Amendment. Because we find that there is no state action under N.C. Gen. Stat. § 25-9-503, this argument also fails. Plaintiffs' second assignment of error is overruled.

The trial court's order granting partial summary judgment for First Virginia is affirmed.

Affirmed.

Judges WALKER and HUDSON concur.